[No. 15682.    Department One.    April 5, 1920.]

THE STATE OF WASHINGTON, *on the Relation of C. M. Wolcott, Appellant,* v. C. J. BOYINGTON *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (61, 67) — EMPLOYEES — REMOVAL — POWERS OF CIVIL SERVICE COMMISSION—REVIEW BY COURTS. A city, by its charter, may create a civil service commission with power to finally decide not only questions of fact, but whether particular acts constitute sufficient cause for the dismissal of an employee; and the courts will not inquire into the facts where there was full opportunity to be heard and evidence was heard tending to prove the charge.

SAME. The dismissal of a city fireman for circulating a petition for the removal of the chief of the fire department is not so frivolous as to warrant a court in holding that the civil service commission did not exercise its honest judgment.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered April 5, 1919, upon findings in favor of the defendants, dismissing certiorari proceedings to review a decision of the civil service commission of Spokane dismissing an employee of the fire department. Affirmed.

[1]Reported in 188 Pac. 777.

*W. C. Donovan* and *Geo. H. Armitage,* for appellant.
*J. M. Geraghty* and *Alex M. Winston,* for respondents.

PARKER, J.—This was a certiorari proceeding in the superior court for Spokane county, wherein relator sought review and reversal of a decision of the civil service commission of the city of Spokane dismissing him from his position as a fireman in the fire department of that city, which position he held as a civil service employee. A hearing in the superior court upon the record of the hearing had before the civil service commission, resulted in a judgment of that court dismissing the proceedings with prejudice, leaving the decision of the civil service commission undisturbed. From this disposition of the cause in the superior court, relator has appealed to this court.

Counsel for relator, contending that he was unlawfully dismissed from the service of the city, invoke the civil service provisions of the city charter found in § 55 thereof, reading as follows:

"Any employee may be suspended by the head of the department under which he is employed and thereupon his salary shall cease. The officer making the order shall forthwith file with the civil service commission a statement of the suspension and the reasons therefor. Within ten days after his suspension the employee so suspended may file an appeal with the civil service commission, who shall hold an inquiry within ten days after the filing of the appeal and shall make decision within ten days after the hearing, whether the employee shall be dismissed or reinstated in his employment. All such hearings shall be public. The decision of the commission shall be final."

There is no other provision of the charter limiting the power of the civil service commission, or the head of the department in which relator was employed,

touching the dismissal of appellant from the service of the city.

On April 18, 1918, the city's commissioner of public safety, he being the head of the department in which relator was employed, made an order in writing, filing the same with the civil service commission, suspending relator from the service of the city, which order reads as follows:

"It having been brought to the attention of the commissioner of public safety that C. M. Wolcott, employed as a fireman in the fire department, has been guilty of conduct in violation of the rules of the department and detrimental to the public service; and it appearing to the said commissioner of public safety, after a full and impartial investigation of said matter, that the said C. M. Wolcott, on or about the 17th day of April, A. D. 1918, and at divers other times prior to said date, at fire station No. 5 and elsewhere, and during the time he was engaged in active duty under his said employment, did prepare and write a petition to the commissioner of public safety, requesting and demanding that the said commissioner of public safety discharge from his position, as chief of the fire department, A. L. Weeks, said discharge to become effective not later than May 1st, 1918. That said Wolcott circulated said petition for signatures among his fellow members of the fire department, and solicited signatures from firemen to the same, and urged them to join him in making such demand upon the commissioner of public safety.

"And it further appearing to the said commissioner of public safety that said conduct was in violation of the rules of the department and detrimental to the public service, and that for the reasons above stated the said C. M. Wolcott should be discharged from his said employment, with loss of salary, subject to an appeal to the civil service commission:

"Now, Therefore, by reason of the premises, it is hereby ordered that the said C. M. Wolcott be, and he is hereby, suspended from his said employment; that

his salary cease from this date, and that unless he appeals from this order to said commission, within ten days from the date hereof, the reason for his suspension herein stated may be taken as confessed by said commission, and his absolute discharge by it ordered.''

Thereafter, in due time, relator filed his appeal with the civil service commission, seeking reinstatement. Thereafter, on April 30, 1918, a hearing was had before the civil service commission, whereat evidence was introduced in support and in rebuttal of the charges so made against relator, he being present and afforded ample opportunity to be heard. That hearing resulted in the decision by the civil service commission here in question, which was sustained by the superior court by dismissal of the certiorari proceeding, which judgment of the superior court is in turn here for review upon the appeal of relator.

The contentions here made in behalf of appellant, in their last analysis, amount to little else than that the civil service commission wrongly decided the case against appellant upon the merits, and that the superior court should, for that reason, have reversed the decision of the civil service commission. That is, that the evidence taken before the civil service commission failed to sustain its decision, and that the cause assigned for appellant's suspension and dismissal was in no event, even if proven, such as to warrant his dismissal from the service of the city. Now, while the subject of the dismissal of civil service employees under a charter provision of the nature here in question is, in a limited sense, a matter of judicial cognizance in the courts, the inquiry which the courts are permitted to make relative thereto can, in no event, extend to the merits, generally speaking, of a case heard and decided by the civil service

commission. The reason is that the employee would
not, upon his dismissal, have any right of redress
whatever except for the charter provisions, which give
him the right to be heard before the tribunal created
by the charter. Manifestly, had the charter given to
the head of the department in which appellant was
employed unrestrained authority to hire and discharge
employees in that department, the courts would, under
no circumstances, have jurisdiction to entertain any
phase of the question of appellant's dismissal from,
or retention in, the service of the city. The city, by
its charter, can create a tribunal with power to finally
decide the question of whether or not a city employee
shall be dismissed from, or retained in, the service
of the city. Now this is what the city of Spokane,
by its charter provisions above quoted, has done. It
has not only given to the civil service commission the
power to decide questions of fact, that is, as to what
acts have been committed by an employee which are
sought to be shown as grounds for his dismissal, but
also the question as to whether or not the particular
acts drawn in question constitute sufficient cause for
the dismissal of an employee. It is to be noted that
the charter provisions above quoted only require that
the order of suspension shall state the *"reasons there-
for."* Nothing is specified in the charter as to what
are, or what are not, sufficient reasons for the suspen-
sion of an employee by the head of the department,
or for his final dismissal by the civil service commis-
sion. It would seem, therefore, that the question as
to what acts are, and what are not, sufficient to war-
rant the dismissal of an employee is a question to be
decided by the civil service commission, just as the
question of whether or not such cause exists in fact
is to be decided by the civil service commission.

It may be that the hearing accorded an employee
by the civil service commission in a particular case
might be so unfair in the circumscribing of the em-
ployee's opportunity to be heard, or in some other
respect, as to conclusively show such arbitrary and
capricious action on the part of the civil service com-
mission as to call for the conclusion that its members
did not exercise their judgment at all, and thus war-
rant interference by the courts, preventing the putting
into force of the decision of the civil service commis-
sion so rendered; but we are quite convinced this is
not such a case. Appellant was awarded full oppor-
tunity to be heard, and evidence was heard tending,
at least in some measure, to prove the charges made
against him as the cause of his suspension and dis-
missal. This, we think, is, in any event, as far as the
courts may inquire into the questions of fact involved.
We also think that the cause of appellant's suspension
and removal upon which the decision of the commis-
sion was rested, was not so frivolous as to warrant
the court in holding that the commission did not ex-
ercise its honest judgment when it decided the cause
to be sufficient. It is not for the courts to say what
cause is or is not sufficient to support a dismissal by
the civil service commission, unless possibly the cause
assigned be so frivolous that all minds must neces-
sarily agree that it is not a legitimate cause.

*Price v. Seattle,* 39 Wash. 376, 81 Pac. 847, seems
decisive of the case before us. That involved charter
provisions similar to the ones here in question. Judge
Rudkin, speaking for the court therein, made the fol-
lowing, among other, observations:

"In the absence of restraints imposed by the con-
stitution or by statute, the power of appointment im-
plies the power of removal, where no definite term
is attached to the office or employment by law. *People*

*ex rel. Griffin v. Lathrop,* 142 N. Y. 113, 36 N. E. 805; *Easson v. Seattle,* 32 Wash. 405, 73 Pac. 496.

"In adopting the civil service system for the purpose of securing, and retaining in its employ, competent servants, we are of the opinion that the people of Seattle deemed it wise to impose no restrictions upon the power of removal, except a requirement that the reasons shall be stated in writing, and an investigation allowed by an impartial board of its own creation. In adopting a charter it was competent for the city to adopt the first rule above stated, which admits of a removal at pleasure and without cause, or the second, which only admits of a removal after a hearing and upon cause shown. In our opinion the city adopted a course midway between the two. It doubtless considered the requirement that the reasons for the removal should be stated in writing and made a matter of record a sufficient safeguard against improper removals, and an investigation by the civil service commission a sufficient protection to the discharged employee. Whether such provisions are wise or unwise is not for the consideration of this court. Where the system extends to a large number of employees, the right of every discharged employee to resort to the courts would doubtless impair, in a measure, the usefulness and efficiency of the system itself. In any event, we do not think that the framers of the charter ever intended that the court should be resorted to in such cases. When, therefore, the appointing power files with the civil service commission a statement in writing showing good and sufficient reasons for the removal, and after investigation the commission confirms the action of the appointing power, the removal is complete, and any further appeal must be to public opinion. *Kimball v. Olmsted,* 20 Wash. 629, 56 Pac. 377; *State ex rel. Gill v. Byrne,* 31 Wash. 213, 71 Pac. 746.''

In *State ex rel. Criswell v. Board of Trustees of Firemen's Relief Pension Fund,* 93 Wash. 468, 161 Pac. 361, this same view of the law was adhered to. That case involved a decision rendered by the firemen's

pension board, which was vested with power to hear and decide applications for relief from the firemen's relief fund. The law under which the question arose being Rem. Code, § 8073, Subd. 4, making the decision of the board final. The question of whether or not the decision of the board was final in the sense that it was not reviewable by the courts, being presented, Judge Fullerton, speaking for the court, said:

"The conclusiveness of the order of the board of pensions is urged in this court. The contention we think must be sustained. It is within the power of the legislature, when enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters arising under the statute, and to make such adjudication final and conclusive.

"The further claim that the right to the relief demanded is a vested right and thus subject to a determination by the courts is also without foundation. Whether the right was vested is subject to inquiry, and since the legislature has vested the board of pensions with full power and authority to determine the inquiry, its conclusion on the question is as final as it is on any other matter of which it is granted complete jurisdiction."

Counsel for appellant seem to rely principally upon our decision in *State ex rel. Powell v. Fassett*, 69 Wash. 555, 125 Pac. 963. It is plain that the question there presented was reviewable in the courts because it was sought to discharge an employee without a statement of any cause therefor whatsoever. No question of merits was involved at all, but it was a question of whether or not the employee had been discharged for cause. That case is a good example of the nature of the inquiry courts are permitted to make touching such cases. Stated generally, we think it may safely be said that the subject of inquiry by the courts touching such cases is not whether they have been decided

rightly or wrongly by the special tribunal created by law to decide them, but whether or not the city authorities, including the special tribunal, have proceeded in the manner prescribed by law, in this case the city's charter.

We are quite convinced that the judgment of the superior court must be affirmed. It is so ordered.

HOLCOMB, C. J., MITCHELL, MACKINTOSH, and MAIN, JJ., concur.