[No. 24905. Department One. July 24, 1934.]

THE STATE OF WASHINGTON, *on the Relation of R. C. Mowre, Respondent*, v. THE CIVIL SERVICE COMMISSION OF TACOMA *et al., Appellants*.[1]

*W. W. Mount, John E. Gallagher*, and *Bartlett Rummel*, for appellants.

*John M. Coffee*, for respondent.

MILLARD, J.—On December 16, 1932, the head of the police department of the city of Tacoma discharged R. C. Mowre from his civil service position of patrolman, on the ground of infraction of paragraph 3, § 49, of the civil service rules, reading as follows:

"Wilful and repeated violation of any lawful and reasonable regulation, order or direction made or given by a superior officer, where such violation has amounted to insubordination or serious breach of proper discipline or has resulted in loss or injury to the public."

[1]Reported in 34 P. (2d) 873.

A letter, or bulletin, dated November 30, 1929, from the chief of police "To all officers" was found in the "Sergeant's Book in the police station" subsequent to the hearing by the civil service commission of Mowre's appeal, and was made a part of the record of that hearing prior to the commission's decision. That is the order, which reads as follows, Mowre was charged with disobeying:

"It has come to my attention that different officers of this department have been sending out official Police letters signed by themselves.

"Hereafter, no officer will send out any letter regarding any police business whatsoever unless same bears the signature of the chief of police or one of the regular captains."

On November 10, 1932, Mowre, while on duty, removed political placards from light poles on city streets—the placing of such cards on the poles was a violation of a city ordinance—which met the disapproval of a certain highway patrolman who demanded that Mowre cease such interference with the political placards. A short verbal battle ensued. Mowre complained to the chief of the state highway patrol concerning the action of the highway patrolman, who, in turn, complained to the Tacoma police department respecting the letter to the chief of the state highway patrol. As a result of the incident, Mowre was suspended for five days, on the ground that he should have taken up the matter with the chief of police before making complaint to the chief of the highway patrol.

Subsequent to the date of Mowre's suspension, the chief of police learned that, on or about October 26, 1932, Mowre, on request of a United States secret service official, executed an affidavit in the nature of a statement by Mowre to that official concerning the apparently intoxicated condition of a superintendent of

a certain Federal prison camp. This superintendent, in some manner, discovered that Mowre had made such an affidavit, and he thereupon complained to the chief of the Tacoma police department. A captain of the police department rebuked Mowre for supplying the information to the United States secret service agent, *advised* Mowre to sign another affidavit to contradict the first one, and by veiled threat of discharge induced Mowre to sign the second affidavit. The police captain *promised* Mowre that it would be ''better for him'' if he signed the second affidavit.

In the meantime, the Federal superintendent was discharged. Mowre's second affidavit could not effect the reinstatement of the superintendent, in view of which, it is clear, Mowre was discharged. It may be said, in passing, that the superintendent of the Federal prison camp lost his position, but not by reason of anything said or done by Mowre. The United States superintendent of prisons so stated in his letter to the chief of police. He informed the chief of police that the second affidavit of Mowre was not contradictory of the first affidavit, and that Mowre should be praised for his willingness to cooperate with another law enforcement agency.

Hearing was had before the civil service commission upon Mowre's appeal. The minutes of a regular meeting of the commission following the hearing, but prior to the commission's decision, disclose that ''Mr. Mowre was given the opportunity of taking a six months' voluntary lay-off instead of the discharge, but refused to accept such a decision.'' That is, the commission, in view of the charter provision limiting suspensions to a maximum of thirty days, offered to find that the charges against Mowre were not sustained if Mowre would sign a request for a six months' leave of absence without pay. At the conclusion of a recess of

fifteen minutes to discuss the matter, the commission made its decision sustaining the action of the head of the police department.

Pursuant to writ of certiorari, issued on application of Mowre, a transcript of the record of the hearing before the civil service commission was certified to the superior court for Pierce county. The court found, in its review of the proceedings, that the decision of the civil service commission was arbitrary and capricious, in that, for the first of the two offenses assigned as ground for discharge, Mowre had previously been punished, and the second alleged offense did not constitute a breach of the rule, as charged. Judgment was entered directing restoration of Mowre to his former employment. From that judgment, the civil service commission and its secretary have appealed.

It is the position of appellants that the city charter, the pertinent provision of which reads as follows, vested the civil service commission with power to finally decide the question whether a city employee shall be dismissed or retained in the service of the city, therefore the trial court was without jurisdiction to review the decision of the civil service commission:

"No employe in the classified service shall be removed or discharged except for cause, and whenever any such employe shall have been removed or discharged, the head of the department, board or office in which he was employed, shall within three days furnish to him a statement in writing setting forth the reasons therefor and file a copy thereof with the Commission. Said employe may within five days thereafter make a request in writing to the Commission for a hearing and if such request is made said employe shall be given a public hearing by the Commission upon the sufficiency of such reasons. At such hearing he may be represented by counsel. Said hearing shall be held within five days after said request is made and at such time and place as the Commission shall determine. The

Commission, or any member thereof shall, at such hearing, have the power to subpoena and require the attendance of witnesses and the production thereby of books, papers and records pertinent thereto, and to administer oaths to such witnesses. It shall subpoena and examine any witnesses requested by either said employe or the head of the department, board or office concerned. Upon such hearing, if a majority of the Commission shall find that said employe was discharged without just cause, said employe shall be immediately reinstated in the position formerly held by him in the City service, and, if so reinstated, he shall be, in the discretion of the Commission, entitled to wages or salary from the City from the time of his removal or discharge up to the time of his reinstatement. The decision of the Commission shall be in writing and signed by a majority of its members and filed with the Commission and shall be final. A copy thereof shall be furnished to said employe, to the head of the department, board or office concerned, and to the City Controller. All papers filed with the Commission shall be public records.''

The record reveals such arbitrariness and caprice on the part of the civil service commission as to call for the conclusion that its members did not exercise their judgment at all, and, as said in *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777, ''thus warrant interference by the courts, preventing the putting into force of the decision of the civil service commission so rendered.''

Standing solitary and alone, the first charge could not constitute willful and repeated violation of a regulation or order. Though respondent were guilty of the one violation of the rule of the police department that ''no officer will send out any letter regarding any police business'' unless same is signed by the chief of police or one of the police captains, for that offense he was punished by suspension for five days. The second offense charged was that of supplying

information, in the form of an affidavit, to a United States secret service agent, on request of the latter, concerning the conduct of a Federal employe. We are not convinced, as the trial court said, "that a policeman should refuse to tell a government inspector any facts within his personal knowledge when such inquiry is officially made." We cannot agree that the truth—and Mowre's statement to the United States inspector was true—should have been withheld by Mowre from the United States government. The cooperation of Tacoma police officers with law enforcement agencies of other governmental bodies should be encouraged, not discouraged.

There is no competent evidence upon which to rest the decision of the civil service commission. The members of the commission were convinced, as reflected by their offer to reinstate Mowre and find that the charges against him were not sustained if Mowre would *voluntarily* sign a request for a six months' leave of absence, that the facts did not sustain the charges. A few minutes subsequent to Mowre's refusal to bargain, the commission decided that the charges were sustained. To state the facts is to establish such arbitrariness and caprice on the part of the civil service commission as warranted the trial court in preventing the putting into force of the commission's decision.

The judgment is affirmed.

BLAKE, MAIN, MITCHELL, and STEINERT, JJ., concur.