[No. 29781. Department One. March 7, 1946.]

THE STATE OF WASHINGTON, *on the Relation of William F. Schussler, Appellant,* v. JOHN L. MATTHIESEN *et al., as Civil Service Commission of the City of Spokane, Respondents.*[1]

[1]Reported in 166 P. (2d) 839.

*Garvin & Frissell,* for appellant.

*G. M. Ferris, B. A. Farley,* and *Paul F. Schiffner,* for respondents.

SIMPSON, J.—This appeal results from a certiorari proceeding in the superior court of Spokane county, wherein appellant sought review and reversal of a decision of the civil service commission of the city of Spokane, dismissing appellant from his civil service position as a police officer of the city of Spokane. A trial in the superior court upon the record of the hearing had before the commission, resulted in a judgment sustaining the action of the civil service commission and dismissing the court proceedings with prejudice. Appellant in his appeal to this court makes the following assignments of error: (1) in making certain findings of fact and conclusions of law; and (2) in entering judgment for the respondents ,and against the appellant.

The facts relating to appellant's dismissal are as follows:

The appellant had been, prior to his dismissal, a police officer of the city of Spokane for about eight years. On March 20, 1945, the commissioner of public safety dismissed appellant, and, in so doing, gave the following reasons:

"ORDER OF SUSPENSION AND REASONS THEREFOR.

"It having been brought to the attention of the Commissioner of Public Safety that William F. Schussler, employed as a patrolman in the Police Division, had been guilty of

conduct in violation of the rules of the Department and detrimental to the public service; and it appearing to the Commissioner of Public Safety, after a full and impartial investigation of said matter, that the said William F. Schussler, on or about the 19th day of March, A. D. 1945, at the Police Station was guilty of conduct unbecoming an officer or employee of the city, did violate reasonable directions given him by his superior officers amounting to acts of insubordination and to disgraceful conduct, was wantonly offensive in his conduct and language toward his superior officers and other employees of the Police Division, and that he is incompetent to perform the duties of his position.

"And it further appearing to the Commissioner of Public Safety that said conduct was in violation of the rules of the Department and detrimental to the public service, and that for the reasons above stated the said William F. Schussler should be suspended from his said employment, with loss of salary, subject to an appeal to the Civil Service Commission:

"Now, therefore, by reason of the premises, it is hereby ordered that the said William F. Schussler be, and he is hereby, suspended from his said employment; that his salary cease from this date, and that, unless he appeals from this Order to said Commission within ten days from the date hereof, the reason for his suspension herein stated may be taken as confessed by said Commission, and his absolute discharge by it ordered."

The order of suspension was filed with the civil service commission. Appellant demanded a bill of particulars, and that the order be made more definite and certain. The information was given in the following language:

"That at the time and place mentioned in the order of suspension herein, the said William F. Schussler was directed by Sergeant D. A. Mangan to report in at the end of his shift as all patrolmen are required to do, and that he refused to obey said order. That Sergeant Mangan directed him to report to Capt. J. J. Fuchs, which he refused to do. That Capt. Fuchs and Sergeant Mangan directed Officer Schussler to quiet down and leave the station, which directions he refused to obey, and that Sergeant Mangan directed him to report to the office of the Chief of Police, which directions he indicated he would or would not obey as he saw fit. That the said Officer Schussler berated Sergeant Mangan and indicated a desire to fight him, that he laid hands upon Officer Lussier and invited him outside to fight.

That during all of said time the said Schussler was loud, belligerent and insolent, and, addressing remarks to the police officers present, called them liars, crooks and perjurers, and said that they all belonged in jail.

"That the officers present were George M. Scotten, E. L. Connelly, Sergeant D. A. Mangan, Capt. J. J. Fuchs, Don Lussier, E. W. Kenworthy, W. J. Alton and D. C. Moulton.

"That the said Schussler is incompetent to perform the duties of a police officer of the City of Spokane because he is not temperamentally suited therefor, that he is unwilling to obey reasonable directions given him by his superior officers and is unwilling to act in harmony with other members of the department."

The facts as presented to the commission may be summarized as follows:

At one time, appellant refused to check in when he came off duty and, when asked to do so, became angry and said it was not necessary for him to check in, started swinging his arms, and said to another officer that he would clean the officer's clock if it was not for "the brass." After that, on the same day, appellant made the remark to another officer: "You are cheap petit larceny."

The appellant then talked to the captain of police and began an argument with him. On another occasion, appellant was abusive, insolent, and refused to obey orders. The story of what happened is best told by Captain James Fuchs in a statement made by him on March 19, 1945, concerning appellant's conduct on that date.

"March 19th, 1945.
"Chief of Police:                    1:20 A. M.

"At about midnight I heard some very loud talk in the hall near the drill hall, and went there to investigate. As soon as I left the booking room I heard Officer Schussler berating Sergeant Mangan, and the first remark I heard was 'I've cleaned your clock before and I'd clean it right now if it wasn't for your brass.' I told Officer Schussler to go home and avoid trouble, but he refused to leave, stating 'I'm not working for you and you can't order me out, I can stay here all night and if you don't like it you can lump it.' He then began a long tirade about the Civil Service hearing where everybody perjured themselves and gave every-

one in the Station to understand that after June 4th he would show all of us a thing or two, accused me of giving him a 'shitty' deal but that I didn't get away with it. I admonished him to be careful about his accusations, and to be especially sure to remember what he had said and was going to say, and not do as he did once before and call everyone a liar. His answer to that was for me not to forget what would happen to all of us when Payne took office, and that he was here, and what made me mad was the fact that I couldn't do anything about it. In his talking he waved his arms in a fury that would do justice to a mad man, and several times came close to my glasses with his hands. I told him to quiet down and quit his raving, that there was no one afraid of him and that he had nothing to gain by spouting off in such a manner and the only way to avoid further trouble was to leave the station. Not satisfied to do as I said he let go the statement that 'all you guys are nothing but a bunch of liars' and Officer Lussier who had been listening in on the argument stepped up and asked him if he thought he was a little tin God? One word brought on another and a near fight was ripe. A group of officers, Connelly, Scotten, Alton, Lussier, Lorentzen, Ross, E. Kenworthy, Piper, Meader and Reporter Doolittle and Russ Alexander walked out of the station along with Schussler and more words were exchanged in front, and when things quieted down I thought the matter was ended, but learned a little later that Schussler had challenged Lussier into the alley, but his car was on Main Avenue so they walked to Main and according to Lussier, Schussler insisted that Lussier get in his car with him which he refused to do. He then drove away and Lussier returned to the station.

"In talking to Sergeant Mangan about the reasons for the argument I learned that Schussler had been asked to call his number when he came in which has been the rule as far back as I remember, but in my presence he swore that he never did and never would, that a dozen other fellows came in without reporting to Mangan and that he wasn't going to be insulted any more by Mangan. That he, Mangan, belonged in the penitentiary. Also informed all of us present that he personally defeated Colburn for which he was dam well pleased, and that I was mad because Colburn wasn't re-elected so I could continue with my dirty work against him, Schussler, but that after June 4th there would be dam few of us left, that we were simply stuck with him

and that he intended to stay, and that we could lump it if we didn't like it.

"I asked all of the above named Officers to write a report at once while the incident was fresh in their minds.

"(Signed) Capt. J. J. Fuchs."

This evidence was corroborated by police officers Mangan, Lussier, Connelly, Moulton, Scotten, Alton, Kenworthy, and Joe Doolittle, the police reporter for the Spokesman Review. Captain Fuchs, over the objection of counsel for appellant, testified to a conversation had with appellant November 2, 1944. The testimony of the captain was to the effect that he called to appellant's attention some difficulties or misunderstandings which had occurred in the past, and asked for co-operation in the police work, but that appellant assumed a belligerent attitude, called the captain and other officers a bunch of liars and perjurers, and said that, if he could get all of them in Walla Walla, it would be the one thing that he would work toward.

Appellant strenuously objects to the action of the commission in allowing the introduction of the evidence to which we have just referred. His contention is that,

". . . under the notice given, the hearing of the Commission and of the Superior Court could not have constituted 'due process,' under the Federal and State constitutions, and under the rules adopted by the Civil Service Commission. . . ."

The civil service rules to which appellant refers are as follows:

"Section 1. Permanent Suspensions: Upon the suspension of any employee in the classified service, notice of the suspension together with a full statement of the causes therefor, stating time, place and circumstance, shall be immediately filed with the Commission by the Commissioner of that department, and a copy thereof served upon the suspended employee. . . .

"Section 4. Hearing: The Commission shall set a date of hearing within ten days after the filing of an appeal and such hearing shall be held within ten days thereafter, subject, however, to Rule 12, Section 6, Division B. The person so charged shall be entitled to call witnesses in his defense, to be represented by counsel, and to be furnished

with a copy of the charges and a list of the witnesses against him not later than five days previous to date of trial. No charges other than those furnished in writing shall be heard against the person so charged in such hearing."

We are not impressed by the contention made by appellant. It is true that the bill of particulars did not refer to any occurrence or conversation on November 1, 1944. However, when the city sought to introduce the evidence, and appellant's counsel objected, the attorney for the city offered to continue the hearing so that appellant could meet the new evidence. Counsel for appellant stated: "We hold that it is incompetent evidence." It is quite true, as argued by counsel for appellant, that in cases tried to the court, a litigant will be restricted to the matter set out in the bill of particulars. Further, that while a complaint cannot be enlarged by a bill of particulars, the latter is construed with reference to the complaint and is restricted to its contents. *Adjustment Department, Olympia Credit Bureau v. Brostrom,* 15 Wn. (2d) 193, 130 P. (2d) 67.

If it be admitted that the appellant was entitled to the benefit of the rules just mentioned, it is obvious that he waived his right to complain about the introduction of the evidence when he refused to take advantage of the offer of continuance. The evidence concerning the November 1st occurrence was only, at the most, ancillary to that relating to the incident of March 18, 1945. It simply reviewed the attitude assumed by appellant in his relations with his fellow officers on the police force.

There is a more cogent reason for holding that the decision of the civil service commission was correct. Art. VI, § 55, of the charter of the city of Spokane reads:

"Section 55. Removals: Any employee may be suspended by the head of the department under which he is employed and thereupon his salary shall cease. The officer making the order shall forthwith file with the civil service commission a statement of the suspension and the reasons therefor. Within ten days after his suspension the employee so suspended may file an appeal with the civil service commission, who shall hold an inquiry within ten days after the filing of the appeal and shall make decision within ten days

after the hearing, whether the employee shall be dismissed or reinstated in his employment. All such hearings shall be public. The decision of the commission shall be final."

The city had the right to discharge any employee without giving any reasons therefor, in the absence of a charter provision, and it was only by charter directions that any employee secured any right to continue his services. Courts will not interfere in any case of this nature, unless the rights given by the charter or other city law have been violated. This court, on numerous occasions, has laid down the rule that a city may, by charter provision, create a tribunal with power to finally decide that an employee may be dismissed from service.

In construing various charter provisions, similar to the one set out above, we have held that, if an opportunity was given the employee to be heard, and if competent evidence supported the charge, the determination of the tribunal would not be subject to further review. Among decisions of this court lending support to this conclusion, we note the following: *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847; *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777; *Ford v. Seattle,* 117 Wash. 55, 200 Pac. 568; *Ryan v. Everett,* 121 Wash. 342, 209 Pac. 532; *State ex rel. Boltin v. Cotterill,* 125 Wash. 533, 216 Pac. 851; *State ex rel. Beebe v. Seattle,* 159 Wash. 392, 293 Pac. 459; *State ex rel. Littau v. Seattle,* 189 Wash. 64, 63 P. (2d) 515; *State ex rel. Ashing v. Davis,* 4 Wn. (2d) 454, 104 P. (2d) 335.

In this case, appellant was charged with conduct unbecoming an officer, with committing acts of insubordination, and with being frequently offensive in his conduct toward his superior officers. The bill of particulars enlarged the charge somewhat. Appellant was granted a hearing before the civil service commission, at which time he was represented by counsel. He heard witnesses testify against him and introduced evidence on his own behalf. The evidence sustained the charges made by the commissioner, and

the civil service commission was entirely justified in making the order dismissing appellant from the service. The judgment is affirmed.

DRIVER, C. J., STEINERT, MILLARD, and MALLERY, JJ., concur.