42 Wn.2d 885 (1953)
259 P.2d 838
THE STATE OF WASHINGTON, on the Relation of Tidewater-Shaver Barge Lines et al., Respondents,
v.
JEROME K. KUYKENDALL et al., as Commissioners of the Public Service Commission, Appellants,
PACIFIC INLAND TARIFF BUREAU, INC., Intervener.[1]
No. 32239.
The Supreme Court of Washington, Department One.
July 17, 1953.
The Attorney General, George R. LaBissoniere and Robert L. Simpson, Assistants, for appellants.
Robert D. McMullen (Norman E. Sutherland, of counsel), for respondents.
Lenihan & Ivers, for intervener.
WEAVER, J.
This is an appeal from a judgment of the superior court reversing and setting aside an order of the Washington public service commission.
The matter involved is the establishment of permanent transportation rates for bulk petroleum products distributed from Pasco, East Pasco, and Attalia, Washington, by motor vehicle common carriers to points in eastern Washington.
Attalia is on the upper Columbia river, fourteen miles down river from Pasco and ten miles down river from East Pasco. At the time of the hearing, and of presentment of the matter to the superior court, it was known that Attalia *887 would cease to exist at some time in the future. It would be inundated by the waters of McNary dam, then under construction on the Columbia river. The problem before the commission was not the rates from Pasco and East Pasco after Attalia had ceased to exist, but the rates which would be effective until Attalia could no longer operate as a distribution point for such products.
During the period involved, petroleum product "tank farms" were located at Attalia and Pasco for petroleum products transported there by water from marine terminals in Portland, Oregon, and Vancouver, Washington. A petroleum products pipe line from Salt Lake City, Utah, was completed in the fall of 1950. It terminated at East Pasco, four miles down river from Pasco.
Truck rates were established from Attalia to eastern Washington in 1938. At that time, Pasco had no bulk storage facilities. It was not a point of deposit for bulk petroleum received from the Columbia river barge lines.
Subsequently, the Port of Pasco built storage facilities for bulk petroleum products arriving by river. It then became necessary to publish motor freight carrier rates from Pasco. In September, 1941, the department of public service, after a hearing, published such rates (cause No. 7487) based upon a partial recognition of Attalia and Pasco as contiguous, competitive points of origin. The published rates were based upon a finding:
"That due to the geographical location of Pasco (14 miles distant from Attalia), it is entitled to a recognition of this advantage at least for destinations in local territory; that for distances up to 50 miles from Pasco, the Pasco rate should be the Attalia rate less 1¢ [per hundred pounds]; for distances over 50 miles and up to 100 miles from Pasco the rate should be the Attalia rate less 1/2¢ [per hundred pounds]; and for distances over 100 miles that the rates from Attalia and Pasco should be on a parity."
In consolidated causes Nos. T-8180 and T-8181 (hearing held October 26, 1948; commission's findings and order entered June 27, 1949), the commission recognized and applied the "Washington truck scale" which had been prepared and *888 presented to the commission by the Pacific Inland Tariff Bureau, Inc. The bureau represented the motor vehicle carriers of bulk petroleum products. It is an intervener on this appeal.
The "truck scale", thus applied by the commission to many situations (with a few exceptions, including Attalia and Pasco), fixed rates based primarily upon the carriers' cost of operation and established rates determined solely upon mileage from point of origin to destination.
The commission found
"The rate proposed by the trucks (Exhibit 5) from Pasco to Spokane was the scale rate of 24 1/2¢ and from Attalia to Spokane the scale rate of 26 1/2¢ . The present rate is 26¢ in both instances. At the hearing the rates from Pasco and Attalia to Spokane were amended to 26¢ and 27¢ respectively.... Proposed rates on the whole, from Pasco and Attalia to points in Eastern Washington are based on scale rates. We found in our Order FH-7487 [quoted supra] of September 23, 1941, re the prescription of rates from Pasco to points in Eastern Washington, that for distances up to 50 miles from Pasco the Pasco rates should be the Attalia rates less 1¢ for distances over 50 miles and up to 100 miles from Pasco the rates should be the Attalia rates less 1/2¢ and for distances over 100 miles that the rates from Attalia and Pasco should be on a parity." (Italics ours.)
The commission further found:
"The record shows that there is no present substantial movement of petroleum products from Pasco; that navigation to Pasco is now so difficult that the barge line has discontinued service to that point; that Attalia will be closed to navigation by the Dam [McNary] construction; that it is probable that the river above Umatilla will be closed to navigation for a period of approximately three years, or more, during the construction of the McNary Dam, and that the only point of permanent competition is through Umatilla, Oregon."
Although urged to apply the "truck scale" to rates from Pasco and Attalia, the commission refused to do so, and reaffirmed the theory of rates it had adopted in cause No. 7487, quoted supra, saying:
"We shall follow that principle here [Pasco rates based upon Attalia rates with a differential for distances under *889 100 miles] which is also consistent with the proposal of the trucks relative to establishing the same rates from Richmond Beach and Seattle to certain points in Western Washington over 50 miles from either origin point. The distances between Seattle and Richmond Beach are approximately the same as the distance between Pasco and Attalia."
Subsequent to the 1949 order, quoted supra, the Pacific Inland Tariff Bureau, Inc., petitioned the commission to reduce the rates from Pasco in order that the carriers could participate in the traffic which would move from East Pasco (four miles from Pasco) as a result of the completion of the pipe line from Salt Lake City. August 9, 1950, the commission entered an order (cause No. T-8520) authorizing the reduction and establishing temporary rates. However, it departed from its former determinations in that it made Pasco the base point from which mileage was figured; but it kept the former differential between Pasco and Attalia for distances under one hundred miles, and retained a parity of rates between them for distances over one hundred miles.
Having succeeded in changing the base point from Attalia to Pasco, the Pacific Inland Tariff Bureau, Inc., in 1951, petitioned the commission to establish suggested permanent rates from Attalia and Pasco (including East Pasco) to points in eastern Washington. The suggested rates were on an actual mileage basis from each point of origin to each point of destination, as determined by the "truck scale." Establishing the suggested rates would: (1) eliminate the parity of rates from Attalia and Pasco; (2) discard the theory of parity of rates for contiguous competitive points of origin (except as to Pasco and East Pasco); and (3) increase all rates from Attalia to a basis one and one-half cents to two cents per hundred pounds higher than Pasco, except to a few points in southeast Washington, to which the Pasco rate would be higher because of greater distance. (Parenthetically, it would appear that, by the 1950 and 1951 petitions, the bureau was attempting to accomplish in two steps that which the commission refused to do in the 1949 order in consolidated causes Nos. T-8180 and T-8181.) Respondents appeared and opposed the application.
*890 After a hearing on the petition, the commission entered its findings and order on August 23, 1951 (cause No. T-8492), establishing the permanent rates substantially as requested. The rates established for Pasco applied to East Pasco also, although they are at least four miles apart, which would appear inconsistent with the theory of the "truck scale," which is based upon mileage from point of origin.
September 18, 1951, respondents, feeling themselves aggrieved by the commission's order of August 23, 1951, filed their petition for a writ of review in the superior court of Thurston county. The writ was issued. After hearing upon motion, the superior court entered an order superseding and suspending the effective date of the commission's order and the rates set forth therein upon condition that respondents file a bond as provided in the order.
The matter having been presented to the superior court, findings of fact, conclusions of law, and judgment were entered June 18, 1952. The order of the commission of August 23, 1951, was vacated, and the rates published pursuant to it were permanently suspended.
Appellants appeal from this judgment, urging six assignments of error, which are argued together because founded upon the alleged substitution by the trial court of its judgment for that of the public service commission.
The trial court entered its conclusion of law No. 1 (to which appellants' assignment of error No. 3 is directed),
"That the respondents [appellants in this court] in entering their order and supplemental order in Cause No. T-8492 acted arbitrarily and that said order is unreasonable and unlawful and must be set aside and vacated."
[1, 2] The power to fix rates is a legislative and not a judicial power. Great Northern R. Co. v. Department of Public Works, 161 Wash. 29, 296 Pac. 142. This court defined the scope of judicial review in matters such as this in State ex rel. Pacific Tel. & Tel. Co. v. Department of Public Service, 19 Wn. (2d) 200, 217, 142 P. (2d) 498 (1943), wherein it is said:
"It was the province of the trial court to review the departmental orders before it and determine whether or not *891 the department (1) had correctly followed the statutes as to matters of procedure, (2) had failed to grant respondent a fair hearing, (3) in making its findings and orders, had acted arbitrarily or capriciously, or (4) had violated rights secured to respondent by the constitution of the United States or the constitution of the state of Washington, or, as so often stated in our decisions, had, in reaching its results, proceeded upon a fundamentally wrong basis."
[3] It is the statutory duty of the public service commission to hold hearings, take evidence, and make findings of fact based upon the evidence in the record. A finding of fact made without evidence in the record to support it, and an order based upon such finding, is arbitrary.
[4] It is true that under the statute (Rem. Rev. Stat., § 10449; RCW 81.04.430) the findings of fact of the commission are prima facie correct, and the burden is upon the one attacking an order based thereon to establish the order to be unreasonable or unlawful. However, if findings are not based upon the evidence, the presumption of their correctness does not remedy the deficiency or absence of evidence to sustain them. State ex rel. Oregon-Washington R. & Nav. Co. v. Walla Walla County, 5 Wn. (2d) 95, 104 P. (2d) 764 (1940).
Our first consideration, then, is to determine whether essential findings of fact, necessary to sustain the commission's order, are supported by the evidence in the record before the commission. If they are not, then the trial court did not err in concluding that the order was arbitrary.
[5] From the record of the hearing, we find (as apparently did the trial court) a complete lack of evidence to support several findings of fact of the commission necessary to uphold its order of August 23, 1951.
The commission found:
"The existing Pasco rates are on the `Washington truck scale' while the existing Attalia rates are substantially below that scale. The `Washington truck scale' leaves no margin of profit sufficient to permit any substantial number of rates to be established on a level below this scale ..."
No evidence was offered by intervener to show what its cost of operation was, either in general under the "truck *892 scale" or in particular from Pasco, East Pasco, and Attalia. No figures were given as to the revenue produced by the present rates from the three points involved, nor are there facts or figures in this record showing that the operating expenses are greater than the revenue obtained through the use of the rates in effect at the time this proceeding was commenced.
The record became deficient when the witnesses and the commission assumed the existence of the facts necessary to establish and justify the correctness and applicability of the "Washington truck scale." Without such evidence, it was error to use the "Washington truck scale" as the criterion to establish the rates from the three points of origin with which we are here concerned, for
"... respondent [public service commission] could not take into consideration matters outside of its record, as a valid order must be based upon the record, and upon findings and conclusions lawfully made by the department from that record." State ex rel. Puget Sound Nav. Co. v. Department of Transportation, 33 Wn. (2d) 448, 484, 206 P. (2d) 456.
The commission also found, in support of its order, that:
"For ten years, Attalia has had an advantage of having rates on a lower basis than Pasco. During this period Pasco originated only a small volume of traffic so that these lower rates were not consequential. Now, however, the Pasco area, including East Pasco, originates more traffic than Attalia. The level of rates from Attalia therefore, has become more important and justifies somewhat higher rates from Attalia." (Italics ours.)
The only evidence before the board to the effect that the traffic from Pasco and Attalia had been materially changed was the testimony of W.W. Chamberlain, who testified on direct examination:
"Q At the time that the order was issued in Cause 7223, which of the two points [Attalia and Pasco] originated the greater volume of petroleum traffic? A Oh, Attalia by quite a margin. Q At the present time and in the foreseeable future, which of the two will originate the greater amount of petroleum traffic? A In the foreseeable future there won't be any Attalia. Q At the present time which originates the *893 greater amount? A I can't give you figures on that, but the combined volume of the barge lines and the pipe line I would say would be that Pasco originated considerably more."
On cross-examination, the same witness testified:
"Q Would your testimony be in the converse, until Attalia is flooded out, Attalia would originate more tonnage than Pasco? A Well, as I stated before, I don't have the figures on it, but with the pipe line coming in there, I would guess that if there was any difference there would probably be more originating in the Pasco area now than Attalia, but I don't know and I stated so. Q You don't know then? A I said I didn't." (Italics ours.)
No evidence was produced to show the actual volume of petroleum products moving from Pasco and East Pasco. The evidence does show that use of the Pasco tank farm, during the period involved, was limited in its use because of the varying water stages of the Columbia river and the Homily rapids. The commission further found
"... that the products arriving at East Pasco are hauled principally by private carriers ..." (Italics ours.)
The products hauled by private carriers are not involved here.
[6] While the commission could take into consideration its previous experience in similar situations, and the general information concerning the subject which goes to make up its fund of expert knowledge, it cannot act on its own information, but must make its findings of fact based upon evidence presented in the record. State ex rel. Country Club of Seattle v. Department of Public Service, 198 Wash. 37, 86 P. (2d) 1104.
There is no evidence in the record to sustain certain findings necessary to support the order of the commission. We therefore agree with the conclusion of the trial court that the order of August 23, 1951, was arbitrary.
This conclusion disposes of all of appellant's assignments of error except the first and second, which are directed to the trial court's finding that:
*894 "The establishment of a parity of rates from competitive origin points is fair and equitable as it permits each locality to compete on an equal basis with contiguous origin points...."
and that long established practice requires that this theory of rate publication be continued as applied to Pasco and Attalia.
In view of our conclusion that the order of August 23, 1951, was entered arbitrarily, we do not reach the questions raised by appellant's first and second assignments of error.
The judgment is affirmed.
GRADY, C.J., MALLERY, HILL, and OLSON, JJ., concur.
NOTES
[1] Reported in 259 P. (2d) 838.