[No. 37804.    En Banc.    November 25, 1966.]

THE STATE OF WASHINGTON, *on the Relation of Joseph A. Perry, Jr., Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.**

*A. L. Newbould* and *Jerry F. King,* for appellants.

*Merges, Brain & Hilyer* (*Edwards E. Merges,* of counsel) and *William C. Goodloe,* for respondent.

WEAVER, J.—Does the scope of judicial review of a civil service commission's approval of the dismissal of a city

*Reported in 420 P.2d 704.

employee encompass a review on the merits? Specifically, the real issue before the court is not "What is right"? but rather, "Who decides what is right"?

Respondent, a Seattle policeman, was dismissed by the chief of police "for conduct unbecoming an officer, for violation of state laws, for conduct likely to bring discredit upon the Seattle Police Department and for the good of the service." The chief of police filed with the civil service commission a Report of Separation which included a statement of reasons.

Respondent requested the commission to conduct an investigation pursuant to Art. 16, § 12 of the Seattle City Charter.[1] Four hearings were held; respondent was represented by counsel; numerous witnesses testified. The commission sustained the dismissal.

Upon review, the superior court reversed the commission and reinstated respondent because, in the court's opinion, the commission was arbitrary and capricious. In *State ex rel. Perry v. Seattle,* 62 Wn.2d 891, 384 P.2d 874 (1963), this court abrogated the reinstatement order and remanded the case for further consideration by the civil service commission "because its proceedings were conducted upon an inherently wrong basis." The commission's formal findings stated:

---

[1]City of Seattle Charter, Art. 16, § 12, provides:

"Sec. 12. TENURE IN CLASSIFIED SERVICE; REMOVAL FOR CAUSE; INVESTIGATION; REINSTATEMENT; SUSPENSION; OATHS AND EVIDENCE: Every officer or employee in the classified civil service shall hold office *until removed* or retired. Any officer or employee whose appointment is complete *may be removed by the appointing power only upon the filing with the commission of a statement in writing of the reasons therefor.* Any officer or employee so removed may *within ten days after his removal demand an investigation.* The commission shall forthwith make such investigation and its finding and decision shall be certified to the appointing officer, and if the removal is not sustained thereby, the officer or employee so removed shall at once be re-instated. Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days. In the course of any investigation each member of the commission or their designated agents shall have power to administer oaths, and shall have the power to require the attendance of any officer or employee or other person and the production of books and papers relevant to such investigation." (Italics ours.)

We can upset the action of the department head in cases of this kind only when such action is arbitrary and capricious.

The commission used the wrong standard in reaching its decision. It did not consider the merits of the issues of fact raised by respondent's discharge; hence, our remand for a new hearing.

Upon receipt of the remittitur the parties stipulated that in the new hearing no further testimony would be taken before the commission; that the new hearing would consist of submission to the commission of a transcript of the evidence of the original hearings, with oral argument thereon; and that the civil service commission should make its decision upon such new hearing.

The commission considered the record and heard argument of counsel. Its minutes, which were transmitted to the chief of police, disclose:

> The Commission further finds and concludes as *its independent judgment* on the matter that the dismissal of . . . [respondent] was for just cause. The action of Chief of Police Ramon is therefore sustained. (Italics ours.)

Our former opinion (62 Wn.2d 891 at 893) sets forth the evidence presented to the commission for its consideration. It is not necessary to repeat it. It is sufficient to state that the reason assigned for respondent's dismissal is *not* "so frivolous that all minds must necessarily agree that it is not a legitimate cause." *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 627, 188 Pac. 777 (1920). The charges were considerably more serious than simply "erratic driving" while off duty. As we pointed out in our former opinion, there was evidence presented to the commission, if believed, to warrant the conclusion that, on two occasions, respondent was affected by intoxicating liquors and it was not safe for him to drive an automobile.

Again, the superior court held that the action of the civil service commission was arbitrary and capricious. The decree entered by the trial court reversed the findings and decision of the commission and remanded the cause for rein-

statement of respondent to the police force as an active police officer.

The city and the commission again present the case for our review.

■ In the last analysis respondent's contention before the superior court and in this court amounts to little else than that the civil service commission wrongly decided the charges against him upon the merits. The superior court agreed. We conclude that neither the superior court nor this court can consider the weight or sufficiency of the evidence. Appellate review is not a trial de novo. That is the province of the civil service commission.

We cannot distinguish the instant case from *State ex rel. Littau v. Seattle,* 189 Wash. 64, 63 P.2d 515 (1937). Littau, a Seattle policeman for 19 years, was discharged. After a full hearing at which he appeared in person and by counsel, the civil service commission sustained the action of the chief of police. The superior court sustained a demurrer to Littau's application for a writ of mandamus to compel his reinstatement to the position of patrolman. This court affirmed dismissal of the action, saying:

> The principle of law governing the situation is this: When, in a case of removal from office or position within the classified civil service, it appears that the appointing power has filed with the civil service commission a written statement of the reasons for the removal, upon charges that cannot be said to be utterly frivolous, and when it further appears that the commission has awarded the party charged a full opportunity to be heard, and that competent evidence has been produced tending, in some measure at least, to prove the charges made, the court may not inquire into the weight or sufficiency of the evidence. Its power is confined to the inquiry whether the officers entrusted with the authority to effect removals and discharges have acted within the prescribed rules.

Other decisions announcing the same doctrine are set forth in the margin.[2]

---

[2] *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847 (1905); *King v. Listman,* 63 Wash. 271, 115 Pac. 93 (1911); *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777 (1920); *Ford v. Seattle,* 117 Wash. 55, 200 Pac. 568 (1921); *Ryan v. Everett,* 121 Wash. 342, 209 Pac. 532 (1922);

In *State ex rel. Schussler v. Matthiesen,* 24 Wn.2d 590, 166 P.2d 839, the court pointed out that, in the absence of a charter provision establishing a merit system or system of civil service, the appointing power of a municipality has the right to discharge an employee with or without reason. When, however, the employee has the protection of a civil service system, the rules of the system must be followed.

Respondent's protection is twofold: that which springs from a hearing before the civil service commission, and that which springs from review by the courts. The first is executive and administrative in nature; the second is judicial. The latter is not a trial de novo on the merits.

■ When the appointing power has filed a Report of Separation and a "statement in writing of the reasons therefor"[1] it then becomes the function of the civil service commission, upon request, to investigate, to hold a hearing, and to reach a conclusion upon the merits of the dismissal. The commission is not only the final fact-finding body, it is the final arbiter of policy. This was recognized in *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777 (1920), wherein the court said:

> It [city charter] has not only given to the civil service commission the power to decide questions of fact, that is, as to what acts have been committed by an employee which are sought to be shown as grounds for his dismissal, but also the question as to whether or not the particular acts drawn in question constitute sufficient cause for the dismissal of an employee.

Upon review by certiorari the function of the court is equally important, but of a different nature. The court is neither a fact-finding agency, a policy-making body, nor a hiring hall. Its function is limited to testing the legality of the administrative procedure. Was a written statement filed setting forth reasons for the discharge? Were the

*State ex rel. Boltin v. Cotterill,* 125 Wash. 533, 216 Pac. 851 (1923); *Bridges v. Patterson,* 135 Wash. 436, 237 Pac. 998 (1925); *State ex rel. Beebe v. Seattle,* 159 Wash. 392, 293 Pac. 459 (1930); *State ex rel. Tate v. Seattle,* 180 Wash. 635, 41 P.2d 784 (1935); *State ex rel. Ashing v. Davis,* 4 Wn.2d 454, 104 P.2d 335 (1940); *State ex rel. Price v. Seattle,* 20 Wn.2d 17, 145 P.2d 286 (1944); *State ex rel. Schussler v. Matthiesen,* 24 Wn.2d 590, 166 P.2d 839 (1946).

charges so frivolous that all minds must necessarily agree that a legitimate cause for discharge was not stated? *State ex rel. Wolcott v. Boyington, supra.* Was respondent advised of the charges preferred against him? Was he afforded the right of a full and complete hearing with the aid of counsel? *Luellen v. Aberdeen,* 20 Wn.2d 594, 148 P.2d 849 (1944). Did the commission disregard the facts? Was the commission's decision made upon "an inherently wrong basis" as illustrated by the prior appeal in this case? Was the action of the commission arbitrary and capricious?

None of these questions requires discussion—except the last—for the record amply supports the conclusion that respondent was not deprived of administrative due process.

■ A decision by an administrative commission is not arbitrary and capricious simply because a trial court and this court conclude, after reading the record, that they would have decided otherwise had they been the administrative commission. Where a tribunal has been established to hold inquiries and make decisions as to whether an employee shall be dismissed, review by the judiciary *is limited* to determining whether an opportunity was given to be heard and whether competent evidence supported the charge. *State ex rel. Schussler v. Matthiesen,* 24 Wn.2d 590, 166 P.2d 839 (1946), and cases cited therein. The crucial question is whether or not there is evidence to support the commission's conclusion. A finding or a conclusion made without evidence to support it, is, of course, arbitrary. *State ex rel. Tidewater-Shaver Barge Lines v. Kuykendall,* 42 Wn.2d 885, 891, 259 P.2d 838 (1953); but it is not arbitrary or capricious if made with due consideration of the evidence presented at the hearing. See *Miller v. Tacoma,* 61 Wn.2d 374, 390, 378 P.2d 464 (1963), and cases cited. The instant case meets this test. Neither the trial court nor this court can substitute its judgment for the independent judgment of the civil service commission. *State ex rel. Wolcott v. Boyington, supra.*

The scope of judicial review requires that this cause be reversed and remanded with directions to dismiss it.

It is so ordered.

HILL, DONWORTH, FINLEY, OTT, and HAMILTON, JJ., concur.

ROSELLINI, C. J. (dissenting)—Respondent, a Seattle policeman, was dismissed by the chief of police "for conduct unbecoming an officer, for violation of state laws, for conduct likely to bring discredit upon the Seattle Police Department and for the good of the service."

However, the only conduct of the respondent given as a basis for these charges was his violation of state traffic regulations on two occasions. Technically, of course, this was conduct unbecoming an officer, it was in violation of state laws, and it was conduct which might conceivably bring discredit on the police department. But it has not been pointed out how dismissal of the respondent was for the good of the service. And, while his conduct warranted disciplinary action, it did not justify such a severe penalty.

Perhaps the penalty of four days' suspension from pay imposed by the respondent's superiors directly above him was a much lighter punishment than his action in driving in an erratic manner and exceeding the speed limit warranted. Certainly a police officer should not violate traffic regulations and should set a good example for other citizens, and there can be no question but that certain types of violation or a consistent pattern of violations would warrant dismissal; but I think that his conduct in this instance could not reasonably be found to be that serious. It is evident that the members of the civil service commission also did not consider it that serious; but according to their findings on the first hearing, they felt called upon to sustain the police chief because they felt that his administrative and disciplinary responsibilities made it necessary that he be given complete discretion in the matter of hiring and firing. In their findings they said:

> We regard this as probably the toughest case to decide that we have had in our experience on the Commission.
> The essence of Mr. Perry's appeal is substantially that the punishment did not fit the crime so to speak. If the Police Chief, in the light of what he and his deputies have heard during this investigation, had seen fit to withdraw

the dismissal, we would be most happy to go along with such action.

The record shows that the respondent was not given a hearing before the decision to dismiss him was made. Like the two trial judges who have heard this case, I have come to the conclusion that the police chief, in this instance, abused the discretion vested in him.

The chief of police testified that in making his decision to dismiss Officer Perry, he took into consideration his own conclusion that Perry had been "at best" a marginal police-man. However, his record contained a number of com-mendations from citizens who had observed him in the performance of his duties and his file showed no demerits, nor reprimands, no suspensions and no complaints. In short, the evidence upon which the chief concluded that he was not a good policeman is missing. On the other hand, Perry's immediate superior testified that he was a good officer and that he had never had any kind of trouble with him.

There may be minds which would consider that a man who has been stopped for alleged erratic driving on two occasions within a month, even though he holds a thereto-fore unblemished record of 20 years' service, has given just cause for dismissal; but I do not consider this to be a reasonable conclusion.

Insofar as I have gleaned from the record, there was nothing in the police department regulations prohibiting drinking when off duty and none which forbade the wearing of a partial uniform so long as the officer's gun was not visible. There was no witness who was willing to say that the respondent was drunk on either occasion, and the evi-dence was that he behaved politely and cooperatively at all times. In short, the only "conduct unbecoming an officer" which was shown was "erratic driving" and exceeding the speed limit. As I have said, these were serious offenses and obviously called for discipline; but the discipline of dis-charge from the police force, with loss of pension rights, was, in my opinion, too severe.

It may be suggested that in reaching this conclusion, I

have ignored our prior statements that the civil service commission is the final arbiter of policy. However, the only "policy" manifested in this decision was the policy that an exercise of discretion by the chief of police will not be disturbed by the commission. The adoption of such a policy by the commission would amount to an abdication of its duty.

There was no evidence of any rule or department policy that traffic violations will automatically result in discharge, and there was no evidence that such an extreme penalty had ever before been imposed for a similar offense.

While the charges were not frivolous as a ground for discipline, when they are considered in the light of the conduct on which they were based, they were indeed frivolous as a ground for discharge, and I would hold that the civil service commission failed to perform its function and exercise an independent judgment when it sustained the dismissal, on the occasion of the second hearing as well as the first. Its findings made at the termination of the hearing are inconsistent with a conclusion that the conduct of the respondent warranted his discharge. It is manifest that this conclusion was the result of the commission's unwillingness to reverse a judgment made by the police chief.

I am aware that this court should not substitute its judgment for that of an administrative tribunal charged by law with the duty of making the administrative decisions when such a judgment has been fairly made; and we should be particularly loath to set aside such a judgment where the administrative tribunal is endowed with experience, technical competence and specialized knowledge in the area of decision. But where, as here, the record reveals that no specialized knowledge or competence was required, or, in any event, was utilized, and where the only policy consideration which appear to have motivated the administrative tribunal was regard for the prerogatives of the officer whose acts it was required to review, I do not think the court is unduly handicapped by ignorance in deciding whether there has been an abuse of discretion.

The civil service commission order dismissing the re-

spondent has been before two different superior court judges; both entered judgment reinstating the respondent and held the action of the commission had been arbitrary and an abuse of discretion. Evidently his immediate superior, who assessed a penalty of 4 days' suspension from pay, felt the conduct of the respondent did not warrant dismissal.

RCW chapter 41.12 is the state law providing for civil service for policemen. RCW 42.12.010 declares that the provisions of the chapter shall not be applicable to cities which have a charter or regulations which "substantially accomplish" the purposes of the chapter.

The grounds for discharge of an employee under civil service are set forth in RCW 41.12.080.

41.12.080 Tenure of employment—Grounds for discharge, reduction, or deprivation of privileges. The tenure of everyone holding an office, place, position or employment under the provisions of this chapter shall be only during good behavior, and any such person may be removed or discharged, suspended without pay, demoted, or reduced in rank, or deprived of vacation privileges or other special privileges for any of the following reasons:

(1) Incompetency, inefficiency or inattention to or dereliction of duty;

(2) Dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public, or a fellow employee, or any other act of omission or commission tending to injure the public service; or any other wilful failure on the part of the employee to properly conduct himself; or any wilful violation of the provisions of this chapter or the rules and regulation to be adopted hereunder;

(3) Mental or physical unfitness for the position which the employee holds;

(4) Dishonest, disgraceful, immoral or prejudicial conduct;

(5) Drunkenness or use of intoxicating liquors, narcotics, or any other habit forming drug, liquid or preparation to such extent that the use thereof interferes with the efficiency or mental or physical fitness of the employee, or which precludes the employee from properly performing the function and duties of any position under civil service;

(6) Conviction of a felony, or a misdemeanor, involving moral turpitude;

(7) Any other act or failure to act which in the judgment of the civil service commissioners is sufficient to show the offender to be an unsuitable and unfit person to be employed in the public service.

"Violation of state laws" is not one of the grounds for discharge given. Conviction of a felony or a misdemeanor is a ground, but the respondent was neither charged with nor convicted of any offense. The use of intoxicating liquors is a ground for discharge only if it interferes with the performance of the employee's duties, and that was not charged here. If some conduct not specified in the statute is made the basis of discharge, it must be such as to show the offender to be an "unsuitable and unfit person to be employed in the public service." The civil service commission made no such finding in this case.

The Seattle City Charter provides for the dismissal of civil service employees "for cause" but does not set up any criteria for determining what is "cause." According to the majority opinion, a civil service employee can be discharged although none of the grounds specified in the state statute have been shown to exist and even though there has been no finding that the employee is unfit. It thus appears to me that the Seattle charter does not "substantially accomplish the purpose" of chapter 41.12; it does not protect the employee from arbitrary dismissal. That being the case, it would seem to me that the provisions of RCW 41.12.080 should apply in this case, there being no comparable provisions in the city charter or regulations. If those provisions are applied, I don't think it can be reasonably contended that grounds for discharge have been shown.

The words of Justice Frankfurter, found in the opinion which he wrote in *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 95 L. Ed. 456, 71 Sup. Ct. 456 (1951), are appropriate here. The statutes under consideration in that case provided that the decision of the National Labor Relations Board should be sustained, if, upon the whole record, substantial evidence existed to

support it. Thus, the reviewing power was not unlike ours under RCW 7.16.120, defining the scope of review by certiorari. Justice Frankfurter had observed that certain of the federal courts had, in the past, shown a tendency to abdicate their function as reviewing bodies and defer too much to administrative expertise, and congress had sought to remedy this situation. He said:

> We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

We are not called upon here to weigh the evidence. We may assume that the civil service commission accepted the state patrol officers' testimony concerning the manner in which the traffic offenses occurred; still, the question remains, was the decision to discharge the respondent arbitrary? I am of the opinion that it was.

It is apparent from the record that the civil service commission in this case came to the conclusion that the conduct of the respondent did not warrant so severe a penalty as that imposed by the police chief, but refused to substitute its judgment for that of the officer whose act it was called upon to review. In so doing, it failed to perform its function according to law, and the trial court, reviewing the order

of the commission on certiorari, correctly set that order aside and entered the proper judgment.

I would affirm the judgment.

HUNTER and HALE, JJ., concur with ROSELLINI, C. J.

March 30, 1967. Petition for rehearing denied.