[No. 3444-5-III. Division Three. June 24, 1980.]

RAMON BENAVIDES, *Appellant,* v. CIVIL SERVICE
COMMISSION OF THE CITY OF SELAH,
*Respondent.*

*Tim Weaver* and *Hovis, Cockrill & Roy,* for appellant.

*Douglas D. Peters* and *Peters, Schmalz, Leadon & Fowler,* for respondent.

McINTURFF, J.—The appellant, Ramon Benavides, appeals from his discharge as the Chief of Police for the City of Selah, Washington.

Mr. Benavides was hired as the Chief of Police in February 1978. In April and July 1978 he was the subject of two grievances filed by the officers of the Selah Police Department. On August 8, 1978, Mr. Benavides received a memorandum from the city manager which outlined areas of needed improvement;[1] but on September 8, 1978, Mr.

---

[1]The memorandum stated:
"The purpose of this memo is to recapitulate some of the items and actions we discussed last week.

Benavides was served with a letter of termination. The city manager stated:

It is with utmost regret that I must terminate your services as Chief of Police for the City of Selah effective at 5:00 p.m. September 9, 1978. You will receive 30 days' termination pay. Best of luck in your future endeavors.

Upon request, the city manager served Mr. Benavides' attorney with a written statement of accusations on September 22, 1978.[2] After hearings before the civil service

---

"A. Work Programs

"1. The examination for sergeant will be the first week in November. You are responsible for securing and scheduling the exam.

"2. A written departmental policy and orientation on the privacy and security act by December 1, 1978.

"3. Revised record system starting in January, 1979 and due in place by August, 1979.

"4. Orientation and training on Juvenile Justice Act and procedures immediately.

"5. Weapons firing training at least twice a year.

"B. Personal Goals.

"1. Better follow-up on administrative matters. . . .

"2. Provide firm and consistent direction for officers.

"3. Be sure that rapid back-up on calls is provided by you when necessary.

"4. Spend some time patrolling. The job is still a mix of administration and patrol work.

"5. Remain up to date on crime scene and field procedures.

"I take these items and the situation in the Department very seriously. I fully expect the work program to be completed as scheduled and significant progress to be made on the personal goals. I am willing to provide any help necessary."

[2]The statement contained these general accusations:

"1. Incompetency, inefficiency, inattention to duty and dereliction of duty concerning your position as Police Chief.

"2. Discourteous treatment of the public and fellow employees, including other acts and omissions and commission tending to injure the public service; willful failure on the part of yourself to properly conduct yourself.

"3. Disgraceful, immoral and prejudicial conduct.

"4. Use of City of Selah equipment for personal business or pleasure.

"5. Failure to abide by and enforce standard operating procedures in force in the City of Selah Police Department.

"6. All other acts or failure to act showing that you are an unsuitable and unfit person to be employed as Police Chief of the City of Selah."

The statement then documented 14 specific instances of misconduct.

commission and the Superior Court, the discharge was affirmed.

■ On appeal, Mr. Benavides contends he was never properly terminated from the police department because the letter dated September 8, 1978, was not accompanied by written accusations as required by RCW 41.12.090.[3] We find, however, that the defective notice of termination on September 8 was superseded by service of a legally adequate notice on September 22, which contained detailed written accusations as required by the statute. *See Martin v. Dayton School Dist. 2*, 85 Wn.2d 411, 413, 536 P.2d 169 (1975); *accord, Hunter v. Board of Directors*, 14 Wn. App. 177, 180, 536 P.2d 1209 (1975). The second notice was served in advance of the hearing before the civil service commission, and there is no evidence of prejudice to preclude termination.

■ Addressing the merits, Mr. Benavides contends: (1) there is not sufficient evidence to support his discharge and (2) the evidence demonstrates a lack of good faith on the part of the City.

> [T]he judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law*, arbitrary, capricious, or contrary to law.

*Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 862, 529 P.2d 1058 (1975), quoting from *Reiger v. Seattle*, 57 Wn.2d 651, 653, 359 P.2d 151 (1961). Exercising our independent judgment, we apply the same standard of review directly to the record considered by the trial court. *Eiden v. Snohomish County Civil Serv. Comm'n*, 13 Wn. App. 32, 37, 533 P.2d 426 (1975).

---

[3]RCW 41.12.090:

"No person in the classified civil service who shall have been permanently appointed or inducted into civil service under provisions of this chapter, shall be . . . discharged except for cause, and only upon *written accusation* of the appointing power . . . a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission."

Under RCW 41.12.090, the civil service commission investigation is:

> confined to the determination of the question of whether such . . . discharge was or was not made for political or religious reasons and was or was not made in good faith [f]or cause.

Following the hearing, the civil service commission stated:

> All members of the commission having agreed that the following accusations are true and are in violation of the provisions of RCW 41.12.080 and the rules of the civil service commission:
>
> (1) Inefficiency, inattention to duty concerning his position as Police Chief, failure to properly administer the department or to direct those under his command to take care of administrative details necessary for the proper running of a police department and failure to maintain the discipline and respect and confidence of his fellow officers.
>
> (2) Use of City equipment for personal use.
>
> It is further found by the commission that the discharge of Ramon Benavides was not made for political or religious reasons and was made in good faith for cause.

The trial court, with limited review, concluded the discharge was made in good faith and for cause. RCW 41.12-.090. Our review of the record discloses substantial and competent evidence to support the discharge. In addition to the testimony of the individual police officers, City Manager Olander, with specific examples, summarized the basic areas of dissatisfaction with Mr. Benavides' performance as Chief of Police:

> (1) Lack of follow–up on administrative matters.
>
> (2) Lack of firm and consistent direction to the men and women in the department.
>
> (3) Incompetency in field procedures, *i.e.*, failure to "back up" another officer during potentially dangerous situations.
>
> (4) Failure to motivate and communicate to police personnel.

Mr. Benavides contends the allegation of misuse of city equipment was frivolous but in his words, and as the record discloses, the incident involved driving a newly purchased

police car for approximately 50 miles to determine whether there were any "bugs" in it. The contention was not frivolous.

The allegations of bad faith and political motivations for his discharge are unsupported by the record. In this vein, we concur with the observations of the trial court:

> It was with considerable interest that I carefully studied the transcript of those proceedings, with the plaintiff's position, that the whole mass of this evidence points to a lack of good faith, in mind also. As counsel indicated, it was difficult for him to point to something specific to indicate that his suspicions, that this discharge was motivated by political or other reasons, were accurate, but that he feels that the accumulation of all the evidence does lead a reviewer to that result. I could not reach the same conclusion as Mr. Weaver as I studied that record. It seems to me as I did so that the record of the facts amply supported the conclusion reached by the commission, and that the commission's determination was made in good faith and was based upon cause, and, therefore, was not arbitrary or capricious.
>
> I am especially interested in Mr. Weaver's pointing to the absence of good faith. The absence of good faith implies, I suppose, bad faith. But counsel does not specify either what the bad faith was, what the motivation for it was, or how the plaintiff was prejudiced in his legal rights in any way by what counsel observes to be an aura throughout the proceedings of bad faith. The court could find none on its own.

In this connection, we note a related appearance of fairness challenge to the civil service commission was abandoned on appeal to this court.

On cross appeal, the civil service commission contends the court erred in taxing the City for the costs of appeal to Superior Court. The costs, totaling $1,294, included $45 for clerk's fee, $340 court reporter's attendance fee, and $908.60 costs of transcription.

■ Although it is the responsibility of the civil service commission to "make, certify, and file" the civil service investigative transcript with the superior court, the statute is silent as to who *pays* the costs of transcription. *See* RCW

41.12.090.[4] Addressing a similar situation in *Portage Bay-Roanoke Park Community Council v. Shorelines Hearings Bd.*, 92 Wn.2d 1, 8, 593 P.2d 151 (1979), the court held it was the responsibility of the parties. The prevailing party is entitled to recover costs. *Bennett v. Board of Adjustment*, 23 Wn. App. 698, 701, 597 P.2d 939 (1979). Mr. Benavides prevailed at neither the superior court nor appellate court levels.

A court reporter must be present at the civil service commission hearing, regardless of whether an appeal is taken. Therefore, Mr. Benavides' costs should not include the court reporter's attendance fee. But, having set the appeal process in motion, court costs and the costs of transcription are recoverable by the prevailing party. Therefore, with the exception of the court reporter's attendance fee, the court's taxing of costs to the City was error.

Judgment of the Superior Court is affirmed as modified.

MUNSON and ROE, JJ., concur.

Reconsideration denied August 12, 1980.

---

[4]RCW 41.12.090: "If such judgment or order be concurred in by the commission or a majority thereof, the accused may appeal therefrom to the court of original and unlimited jurisdiction in civil suits of the county wherein he resides. Such appeal shall be taken by serving the commission, . . . and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court. The commission shall, within ten days after the filing of such notice, make, certify and file such transcript with such court."