[No. 5851-4-III.   Division Three.   January 3, 1985.]

GLENN BUTNER, *Appellant,* v. THE CITY OF PASCO, *Respondent.*

*Edward H. McKinlay* and *McKinlay & Hultgrenn,* for appellant.

*Greg A. Rubstello, City Attorney,* for respondent.

MUNSON, J.—Lieutenant Glenn Butner appeals his discharge from the Pasco Police Department, contending: (1) we should review his case de novo; (2) the Civil Service Commission erroneously considered certain polygraph examination results; (3) the Commission was biased; (4) the Commission incorrectly based his discharge on a violation of an order not to speak to the press; and (5) the Commission abused its discretion in upholding the discharge instead of ordering less drastic sanctions. We affirm.

The Commission's findings of fact are not challenged. Butner was discharged after 19½ years with the Pasco Police Department. For approximately 3 years prior to the

discharge, Butner and Chief Vandiver experienced continuing and increasing difficulties. Many of these difficulties concerned Butner's relationship with Humphrey Ross (a convicted felon and an informant). While several grounds were given as the bases for discharge, we will only consider those grounds which the Commission found to be substantiated. Specifically:

1. Butner represented to the chief that Ross needed sitz baths for health problems and would check him out of jail, ostensibly for that purpose, for periods of time ranging from 35 minutes to 8½ hours. Sometimes they went to the home of Ross' wife, other times to Ross' girl friend's home. The Commission found Butner intentionally deceived the chief, the sheriff, and the deputy prosecutor regarding the need for these baths.

2. Butner took it upon himself to transport Ross, a state prisoner, to Shelton for a hearing before the parole board, at city expense. Butner attempted to keep the trip a secret from the chief. The Commission found this incident further substantiated the charge that the relationship between Ross and Butner was improper and incompatible with the role of a law enforcement officer.

3. Butner intervened "almost as Humphrey Ross' private police force" in a domestic matter between Ross and another man. The Commission found the incident to be a continuation of the improper relationship between Butner and Ross, not compatible with proper law enforcement and tending to cause injury to the public service.

4. At Ross' request, Butner procured release of certain prostitutes from jail on condition they leave the city. The Commission found this to be "another link" in the charge of an improper relationship which was detrimental to the public service.

5. When he learned the sheriff was investigating Ross, Butner accused the sheriff of investigating Butner. The Commission found his conduct "at the least discourteous."

6. On two occasions, Butner violated the chief's direct order that Butner have no further contact with Ross.

7. The Commission found each example set forth in the notice of discharge of Butner's "unprofessional and insubordinate attitude" to be well substantiated by the evidence. These include Butner's admitted distrust of the chief, taking a city car for personal business and then not admitting it when questioned by the chief, violating a direct order not to discuss a certain matter with anyone, calling the undersheriff a derogatory name, and violating a direct order to turn over certain documents to the chief.

The Commission upheld Butner's discharge, and the Superior Court affirmed. Additional facts are set forth below.

■ Butner first contends the appropriate standard of review here is de novo. RCW 41.12.090 provides the sole ground for appeal shall be whether the discharge was made in good faith for cause. Appellate review under RCW 41.12.090 is de novo only in the sense this court independently examines the administrative record, exclusive of the trial court's findings. *Greig v. Metzler,* 33 Wn. App. 223, 653 P.2d 1346 (1982); *Skold v. Johnson,* 29 Wn. App. 541, 630 P.2d 456 (1981); *Benavides v. Civil Serv. Comm'n,* 26 Wn. App. 531, 613 P.2d 807 (1980); *Eiden v. Snohomish Cy. Civil Serv. Comm'n,* 13 Wn. App. 32, 533 P.2d 426 (1975).

Our review is limited to determining whether the Commission acted arbitrarily, capriciously, or upon an inherently wrong basis. *State ex rel. Perry v. Seattle,* 69 Wn.2d 816, 420 P.2d 704 (1966); *Greig v. Metzler, supra; Benavides v. Civil Serv. Comm'n, supra; In re Hahn,* 12 Wn. App. 243, 529 P.2d 484 (1974). Under the arbitrary and capricious standard, we must uphold the Commission unless we find willful and unreasoning action in disregard of the facts and circumstances. *Skagit Cy. v. Department of Ecology,* 93 Wn.2d 742, 613 P.2d 115 (1980). Furthermore, the Commission's unchallenged findings are verities on appeal. *Skold v. Johnson, supra.* It is in this context we review this case.

Butner next contends the Commission erroneously con-

sidered results of two polygraph examinations, and this error permeated the Commission's analysis and result. The polygraph examiner believed both Ross and Butner were deceptive in answering whether Ross was paying Butner to cover up illegal activities. While the deceptive answers were given as one basis for discharge, no facts of any illegal payments are in evidence. There was no stipulation regarding admissibility, and Butner maintained he had been assured the polygraph results would be used as an investigative tool only, and would not be used in any hearings.

At the beginning of the hearing, the Commission ruled it would not require the witnesses to testify in any particular order. Therefore, the City was allowed to present foundation testimony regarding the reliability and accuracy of the polygraph equipment before presenting any testimony about whether Butner had fully consented to take the examination. *See* RCW 49.44.120.[1] The Commission did not decide the polygraph results would be inadmissible until its final ruling despite a pretrial motion by Butner and several renewed motions to suppress.

Witnesses for the City were allowed to testify about the significance to them of the polygraph results. While several grounds were listed in the notice of discharge, Chief Vandiver testified the polygraph results were among the more significant factors in that they corroborated the inference of an improper relationship between Ross and Butner. Chief Vandiver testified the discharge was based on a series of

---

[1]RCW 49.44.120 provides in pertinent part: "It shall be unlawful for any person, firm, corporation or the state of Washington, its political subdivisions or municipal corporations to require any employee or prospective employee to take or be subjected to any lie detector or similar tests as a condition of employment or continued employment: *Provided,* That this section shall not apply to persons making initial application for employment with any law enforcement agency: *Provided further,* That this section shall not apply to either the initial application for employment or continued employment of persons who dispense controlled substances as defined in chapter 69.50 RCW, or to persons in sensitive positions directly involving national security, or to persons in the field of public law enforcement who are seeking promotion to a rank of captain or higher." Neither proviso is applicable here.

events over time, no one of which would justify discharge. He testified grounds independent of the polygraph which would justify discharge were Butner's role in the release of prostitutes from jail, his violation of a direct order to turn over certain documents to the chief, and Butner's mishandling of a dispute between Ross and another man.

City Manager Kraft testified the polygraph results were "like putting a straw on the camel's back." However, Kraft also testified the polygraph results were not the determinative factor in the decision to discharge Butner. Kraft stated the decision was based on a "culmination" of the bad relations between the chief and Butner, including Butner's reluctance to communicate and to carry out the chief's orders.

On the other hand, Butner presented several witnesses who testified either to his reputation for truthfulness or that they would believe Butner over a polygraph.

The investigator who negotiated with Butner for the polygraph failed to appear at the hearing, although the City had indicated from the beginning of the hearing he would testify. The Commission ruled the conditions under which Butner agreed to take the polygraph examination were not adequately established.

Regarding Ross' polygraph results, the Commission ruled testimony about them would not be hearsay and consent was not an issue. However, the Commission further ruled that to admit the evidence as proof of illegal payments without Butner having the opportunity to cross–examine[2] "would be setting a dangerous precedent," and declined to admit Ross' polygraph results into evidence.

The City trod on dangerous ground when it raised the issue of the polygraph results. The only pertinent point to be made was that Ross and Butner had an improper monetary relationship. There was no evidence of such a relation-

---

[2]Ross was apparently at the Washington State Penitentiary at the time of the hearing. Apparently both Butner and the Commission believed it was incumbent upon the City to produce Ross.

ship except each answered questions which the examiner believed evidenced deception.

The number of trial hours devoted to testimony about the polygraph, the examinations and their admissibility, plus time expended on that issue here, evidence the vice of prosecutorial officers overtrying their cases by attempting to introduce irrelevant and questionable matters. It is a practice which does not commend itself to the trial bar. This is particularly true of Ross' examination results. Butner was alleged to be "on the take" from Ross, but there is not a scintilla of evidence regarding any money changing hands. Ross did not testify. The results of Ross' polygraph examination were clearly inadmissible hearsay.

■ The essential issue, then, is did the Commission in fact base its decision on the polygraph results, even though it said it did not? Butner claims the erroneous consideration of the polygraph results contributed to a denial of due process because a lay panel is automatically "tainted" when it hears inadmissible evidence. The City responds the rule is to the contrary when a judge sits as trier of fact. *Allen v. Abrahamson,* 12 Wn. App. 103, 108, 529 P.2d 469, 78 A.L.R.3d 461 (1974). The City argues it was entitled to make an offer of proof before the Commission regarding the polygraph evidence. ER 103(a)(2); *Northern State Constr. Co. v. Robbins,* 76 Wn.2d 357, 457 P.2d 187 (1969). Since the Commission hearing is the forum in which the record is made, an offer of proof is appropriate. However, this "offer of proof" went on for hours, in the form of extended testimony. Here it exceeded what we believe was contemplated in *Robbins.* Furthermore, as noted, we have reservations about the City raising the issue at all given the posture of this case.

The Commission concluded upon uncontested findings:

Lt. Butner has served on the Pasco Police Department over nineteen years. But no matter how unblemished a record Lt. Butner may have had prior to the charges in this proceeding, length of service is not a license to open insubordination or improprieties in dealing with a locally

notorious felon.

For any police department to function effectively each officer must be a team player. No man in [sic] an island unto himself no matter how skilled or brilliant he or she might be.

The Commission's lengthy and detailed findings, summarized above, contain ample bases upon which to discharge Butner without reference to the polygraph evidence. *State ex rel. Schussler v. Matthiesen*, 24 Wn.2d 590, 166 P.2d 839 (1946); *Benavides v. Civil Serv. Comm'n, supra.* We find the testimony relating to the polygraphs did not influence the Commission's decision.

Butner next contends the Commission was biased because one of its members, Webster Jackson, had been the subject of a drug investigation by Butner. He claims the Commission reluctantly appointed a substitute commissioner for this hearing and clearly indicated its faith in Jackson.

The Commission appointed a pro tempore secretary to preserve the "appearance of fairness". Webster Jackson testified at the hearing and Butner extensively cross-examined him. There is no indication of any reluctance or bias by the Commission. Had he not been replaced, when he was called as a witness, the entire proceeding may have been jeopardized. Nor is there any indication Butner sought to have his hearing before the superior court, although he recognizes that would be the appropriate forum if the Commission were biased. *State ex rel. Beam v. Fulwiler*, 76 Wn.2d 313, 456 P.2d 322 (1969). We find no error.

Butner next contends the Commission violated his constitutional rights to free speech by upholding his discharge on the basis of certain comments he made to a Tri–City Herald columnist. *Brukiewa v. Police Comm'r*, 257 Md. 36, 263 A.2d 210 (1970).

Butner's statements, implying the police department was persecuting him, were made in direct violation of the chief's order not to discuss the case with the news media. The Commission found the statements "not of earthshaking

consequence," but "indicative of an attitude". The Commission did not rely on this incident as the basis for upholding Butner's discharge. Again, there was ample other evidence upon which to base Butner's discharge.

Butner last contends discharge is too harsh a penalty for someone with a previously unblemished record and 19½ years of experience. *Blake v. State Personnel Bd.*, 25 Cal. App. 3d 541, 102 Cal. Rptr. 50 (1972).

In *Benavides v. Civil Serv. Comm'n, supra,* this court upheld a police chief's discharge on the grounds of lack of follow–up on administrative matters, lack of consistent direction to the police force, incompetency in field procedures, failure to communicate to police personnel, and misuse of city equipment. Likewise, three instances of insubordinate and abusive conduct toward superior officers were held to be sufficient grounds for discharge in *State ex rel. Schussler v. Matthiesen, supra.*

The judiciary is to give considerable deference to remedies imposed by an administrative agency. *Skold v. Johnson, supra.* Considering the sitz baths, the repeated violations of direct orders, the release of prostitutes, and the poor working relationship between Butner and the chief, the Commission did not act arbitrarily or capriciously, or without good cause.

The Commission and Superior Court are affirmed.

THOMPSON, J., and HOPKINS, J. Pro Tem., concur.

Review denied by Supreme Court March 15, 1985.