[No. 931-3. Division Three. February 19, 1975.]

JAMES B. PORTER, *Appellant*, v. THE CIVIL SERVICE COMMISSION OF SPOKANE, *Respondent*.

*Lawrence Cary Smith*, for appellant.

*Richard F. Wrenn, Corporation Counsel*, and *Carleton B. Waldrop, Assistant*, for respondent.

GREEN, J.—Petitioner-appellant appeals from a judgment

affirming a decision of the Spokane Civil Service Commission sustaining his discharge from city employment.

Petitioner was an employee of the Water Department of the City of Spokane. On February 24, 1970, he was convicted on two counts of indecent liberties and sentenced to a term of not more than 20 years on each count. Petitioner appealed the conviction to this division of the Court of Appeals.

Thereafter, on August 14, 1970, petitioner was served with a notice of discharge from the City Manager[1] and promptly filed an appeal with the Civil Service Commission. Hearing on the Commission appeal was delayed pending the outcome of the criminal appeal.

On December 4, 1970, the conviction was reversed and remanded for new trial because of the trial court's failure to secure petitioner's consent before allowing the jury to separate during trial. This case was not retried.

On June 27, 1972, hearings commenced before the Commission limited to items 2 and 3 of the notice of discharge, i.e., whether petitioner was guilty of misconduct unbecoming a city employee and conduct amounting to disgraceful conduct. In the course of the hearing, the following evidence was produced: the testimony of petitioner, a former wife, the Assistant City Manager, other city employees and, in addition, the record of the criminal trial. The Commission confirmed petitioner's discharge.

Four issues need be determined on review: (1) Was hearsay testimony improperly considered? (2) Are the Civil Service rules allowing discharge of an employee for disgraceful conduct or conduct unbecoming a city employee

---

[1] The Notice of Discharge provided:

"It has been brought to my attention that:

"1. You have been convicted of a felony involving moral turpitude.

"2. You have been guilty of conduct unbecoming an employee of the city.

"3. You have been guilty of conduct which amounts to disgraceful conduct.

"This is to notify you and inform you that you are discharged from the employment of the City of Spokane effective 5:00 p.m. August 22, 1970."

so vague as to be unconstitutional? (3) Can a city employee be discharged for isolated incidents of unbecoming or disgraceful off-duty conduct? (4) Did the Commission erroneously admit into evidence the record of petitioner's criminal trial? These questions must be considered in light of the limited scope of review on appeal from a Civil Service Commission decision.

The court in *State ex rel. Perry v. Seattle*, 69 Wn.2d 816, 817, 420 P.2d 704 (1966), placed the scope of judicial review in proper perspective, stating:

> Specifically, the real issue before the court is not "What is right"? but rather, "Who decides what is right"?

In that case, a Seattle policeman was dismissed by the Chief of Police for violating state laws, for conduct unbecoming an officer and likely to bring discredit upon the Police Department, and for the good of the service. The Commission sustained the officer's dismissal. In upholding the Commission decision, the court quoted from *State ex rel. Littau v. Seattle*, 189 Wash. 64, 69, 63 P.2d 515 (1937):

> The principle of law governing the situation is this: When, . . . it appears that the appointing power has filed with the civil service commission a written statement of the reasons for the removal upon charges that cannot be said to be utterly frivolous, and when it further appears that the commission has awarded the party charged a full opportunity to be heard, and that competent evidence has been produced tending, . . . to prove the charges made, the court may not inquire into the weight or sufficiency of the evidence. *Its power is confined to the inquiry whether the officers entrusted with the authority to effect removals and discharges have acted within the prescribed rules.*

(Italics ours.) and concluded that:

> The court is neither a fact-finding agency, a policy-making body, nor a hiring hall. Its function is limited to testing the legality of the administrative procedure.

*State ex rel. Perry v. Seattle, supra* at 820. More recently, in *Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 862, 529 P.2d 1058 (1975), the court stated:

In reviewing the actions of administrative agencies, this court has consistently followed the rule established in *Reiger v. Seattle*, 57 Wn.2d 651, 359 P.2d 151 (1961), wherein we stated on page 653:

> [T]he judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law,* arbitrary, capricious or contrary to law.

From the foregoing, it is evident that our review is limited to a determination of (1) whether the Commission followed the governing statute, ordinances and civil service rules, and (2) whether the Commission decision was arbitrary or capricious.

At the Commission hearing, testimony was taken on the subject of petitioner's indecent or lewd conduct with a stepdaughter on March 18, 1968. Petitioner testified that on that date his then-second wife discovered him in bed in the nude with her 7-year-old daughter, at about 2:15 a.m. He sought to explain the incident by stating that he was so intoxicated that he apparently walked into the child's room by mistake. The daughter's mother testified that upon hearing a noise, she went to the daughter's room and saw petitioner in bed with her daughter. Over petitioner's objection, the mother was allowed to testify that immediately thereafter the daughter told her about certain lewd conduct that was engaged in between the petitioner and the daughter. After leaving her daughter, the mother went to the kitchen where she was confronted by petitioner who held a butcher knife and told her to write a suicide note beginning with the words, "I am going to divorce James B. Porter because of incest." Petitioner admitted picking up the butcher knife but explained, "Oh, I suppose I didn't have a cigarette handy and I picked up something. . . . I just held it to clean my nails with." He denied any improper actions with his stepdaughter. The mother testified that the incident was not reported to the police because she was afraid of petitioner and wanted to be left alone. The parties were subsequently divorced.

This witness testified that during her marriage to petitioner he had a serious drinking problem. She also stated that on two occasions petitioner suggested that she engage in certain lewd conduct while he watched. She had been beaten up by petitioner on one occasion requiring emergency medical attention.

The stepdaughter did not testify. The mother explained that the daughter's failure to appear at the hearing was on advice of her doctor who stated that it would not be psychologically healthy for the child to recall the then 4-year-old incident.

The Assistant City Manager, Glen Yake, who had within his responsibility the water division, stated that because of the close contact between the water division and the public, as well as the impairment of morale within the division if petitioner were rehired, management would resist any effort to force the rehiring of petitioner.[2] He also stated that many young people were employed by the Water Department in summer programs; that water service men worked in the streets with equipment which usually resulted in young people gathering as onlookers; and that Water Department personnel frequently went into private homes. He then stated:

> These people are our public relations people. We use them—we must have the . . . assurance that those we place in a position where they do have access to private property, to private homes, are of a caliber that . . . will hold us proud of their stature, their attention to duty, and their personality.

Mr. Yake acknowledged, however, that during petitioner's 12 years of employment he had no knowledge of any misconduct by him in any private home and that as a worker

---

[2] "It is my judgment that the population of the water division, its relationship to the public and the morale of the remainder of the workers would be greatly impaired if we were forced to rehire Mr. Porter. . . . All our employees come in contact with each other at one time or another and into contact with the public. There is no assignment that we make which would ensure isolation. Therefore, it is my duty that management will resist with all the powers that we have any effort to force the rehiring of Mr. Jim Porter."

he was comparatively acceptable. The water service supervisor confirmed Mr. Yake's statement that there would be some problem with other employees.[3]

First, petitioner contends the Commission erroneously considered the hearsay testimony of petitioner's second wife, with respect to the statements made to her by her 7-year-old daughter immediately after the March 18, 1968, incident. Rule XI of the Commission rules, section 7 provides:

> *Hearings shall be informal with technical rules of evidence not applying* except the rules of privilege recognized by law. . . . Testimony shall, *as determined by the Commission,* be under oath administered by the Commission or its agent.

(Italics ours.) Under this rule, the Commission is given discretion relative to the admission of evidence, *i.e.*, the technical rules of evidence need not be strictly followed in Commission proceedings. *See* 4 E. McQuillin, *Law of Municipal Corporations*, § 12.261(a), at 383 (3d ed. rev. 1968). We find no abuse of discretion in this case. Moreover, the statements made by the daughter were close enough to the event to be embraced within the res gestae rule and consequently admissible even if the technical rules of evidence were applied. *See Johnston v. Ohls*, 76 Wn.2d 398, 405-06, 457 P.2d 194 (1969). Finally, the stepdaughter's statement is merely explanatory of the mother's direct testimony.

Second, it is contended that the Civil Service rules allowing discharge of an employee for disgraceful conduct or conduct unbecoming a city employee are so vague as to be unconstitutional. We disagree. Rule IX of the Commission rules, section 5(f) dealing with cause for discharge, states:

> [C]onduct which amounts to disgraceful conduct, whether such acts were committed on or off duty;

and under section 5(g) the rule provides:

> . . . of conduct unbecoming an officer or an employee of the city;

---

[3]"There would be some problem with some of the employees that Mr. Porter would have to work with. Whether they would be unsolvable or not is something I cannot determine at this time."

Under such rules, our court has upheld the discharge of civil servants for general causes similar to those applied to the appellant. *See State ex rel. Perry v. Seattle, supra; Wenatchee v. Berg*, 1 Wn. App. 354, 461 P.2d 563 (1969); *Arnett v. Kennedy*, 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974). Further, petitioner knew the precise conduct which was the subject of his hearing and the basis for his discharge and, therefore, was afforded administrative due process. *See State ex rel. Beam v. Fulwiler*, 76 Wn.2d 313, 456 P.2d 322 (1969); *Deering v. Seattle*, 10 Wn. App. 832, 520 P.2d 638 (1974). Petitioner was represented by counsel and given a fair and reasonable opportunity to present his case at the hearing. We find no error.

Third, it is contended the Commission erroneously confirmed the discharge of petitioner upon the ground that a city employee should not be discharged for isolated incidents of unbecoming or disgraceful off-duty conduct. We disagree. There was ample testimony by the Assistant City Manager concerning the effect which the continuation of petitioner's employment might have upon other employees and upon public confidence in the event petitioner were retained. This is a matter that lies clearly within the discretion of the Commission; there is sufficient evidence to support their conclusion that petitioner's conduct would affect his employment.

Finally, petitioner contends that the record of his criminal trial was improperly admitted in evidence at the Commission hearing. In support of this contention, petitioner challenges the constitutionality of the trial proceedings asserting that the judge erred in denying a motion for continuance, which in turn effectively denied his right to counsel and to cross-examine the witnesses against him. We disagree.

We have carefully reviewed the record of the criminal trial. It reflects that petitioner retained competent defense counsel who represented him from the time of his arrest until the night before trial. At that late date, petitioner discharged him. The next morning, counsel appeared and

represented to the court that he was prepared to proceed but for his discharge. Petitioner requested a continuance to retain other counsel. A continuance was granted for 1 week only because the prosecuting attorney had previously agreed to it.[4] Subsequently, on the morning of the trial petitioner, not having obtained other counsel, made a similar request for continuance. This request was denied. At that time, petitioner's former attorney was appointed to represent him and the court directed him to remain in the courtroom during the trial and render such assistance as might be requested by petitioner.[5] Petitioner, however, re-

---

[4] In granting the initial request for continuance, the court said:

"It is my opinion, Mr. Porter, that the only reason that this action was done of yours, to discharge Mr. Maxey last night between five and six o'clock on the day before the case was set for trial, was purely and solely a device and a subterfuge to avoid having this case brought to trial.

". . .

"And but for the agreement of the prosecuting attorney that a continuance would be granted in this matter for an additional week, I would direct the matter to be taken to trial on schedule tomorrow, because we have a court available to hear the matter. We are in a jury term, and I am not disposed to set this matter over to another jury term. I am therefore going to direct you to obtain counsel immediately, and I will grant one week's continuance for the hearing of this case, and it will be brought to trial. You have a right to counsel. You are employed, you can obtain counsel. But no further continuance beyond one week will be granted. Is that clear?"

[5] In denying petitioner's request for a further continuance, the court made the following comments:

"[I]t is my recollection from the last that we heard concerning this matter a week ago today, Mr. Maxey reported to the Court at that time that he was prepared for trial. That he would cooperate to the fullest in assisting any other counsel that Mr. Porter should decide to retain in preparing for the trial, and turning over his files and preparatory notes to him—which was well known to Mr. Porter at the time, he being present in court.

"Mr. Maxey had—despite a conference with Mr. Porter a few weeks previously, in which he said he would willingly withdraw if Mr. Porter wished him to at the time—two weeks went by and no action was taken by Mr. Porter. Mr. Maxey did, nevertheless, proceed to prepare for trial. Subpoenas were issued for witnesses, and the preparation was ready, and Mr. Maxey was ready to proceed to trial at the time that he was discharged by Mr. Porter. At that time I indicated to Mr. Porter

fused to allow counsel to actively participate and chose to remain mute.

■ The granting or denial of a motion for continuance lies in the sound discretion of the trial court. *State v. Miles*, 77 Wn.2d 593, 597, 464 P.2d 723 (1970). From the record we conclude that the trial court did not abuse its discretion.

Petitioner also contends that the use of the record of the prior proceeding denied him the right of confrontation and cross-examination of the witnesses at the Commission hearing. That record showed that in December 1968 and July 1969, petitioner took indecent liberties with his two daughters by his first marriage, ages 10 and 12, respectively, while the children were visiting him. The younger daughter testified to several prior occurrences of this same nature. The conduct revealed in the prior proceedings reflected a pattern similar to that described by the second wife at the Commission hearing. His first wife and two daughters who testified at the criminal trial were residing in western Washington and were, therefore, unavailable for the Commission hearing. However, in the former trial, although unexercised, petitioner was accorded his full right to confrontation and cross-examination of the witnesses. *State v. Roebuck*, 75 Wn.2d 67, 72, 448 P.2d 934 (1968); *State v. Williams*, 9 Wn. App. 663, 513 P.2d 1045 (1973).

■ The rules governing the use of former testimony at a subsequent trial are set out in CR 43(i)[6] and the guide-

that I felt his actions constituted under the circumstances at the time, due to other matters involved, a waiver of his right to counsel, and a deliberate interference with the due process of the law in this particular matter. We now come to the time beyond which it was indicated a continuance would not be granted."

[6]CR 43(i) provides:

"If the judge finds a witness at a former trial or proceeding to be unavailable as a witness within the conditions set forth in Rule 26(d)(3) governing the use of depositions, the testimony of such witness on the former occasion shall be admitted for use as testimony in a trial or proceeding involving substantially the same matter when (1) the testimony is offered against a party who offered it in his own behalf on the former occasion, or against the successor in interest of such party, or (2) *the testimony is offered against a party against whom, or against whose predecessor in interest, it was offered on the former occasion.*" (Italics ours.)

lines for the admissibility of depositions in CR 32(a)(3).[7] In *Sepich v. Department of Labor & Indus.*, 75 Wn.2d 312, 317-18, 450 P.2d 940 (1969), the court held that when these rules are read together:

> [I]t becomes clear that the provisions must be literally construed. Support for this view is found in 5 Wigmore, Evidence § 1401, at 146 (3d ed. 1940) wherein Professor Wigmore states:
>
> > (a) There is on principle no distinction between a *deposition* and *former testimony* as to the conditions upon which either may be used at the trial.
>
> *See also* C. McCormick, Law of Evidence § 234, at 495-96 (1954). With this position, as applied to the admission of former testimony under CR 43(i), we substantially agree. It expresses the true intent of CR 43(i) as adopted in 1960.
>
> . . .
>
> The rule is designed to permit litigants to submit to the trial court all matters relevant to a determination of the controversy. Any other interpretation would only serve to thwart that purpose.

Applying these rules a fortiori to the less formal procedures before the Commission, we find the requisite unavailability of witnesses, that the petitioner was afforded the right of confrontation and that the record was thus properly admitted.

Moreover, under Commission Rule XI, section 7, the record could be properly considered in the discretion of the

---

[7] CR 32(a)(3) provides:

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) *that the witness resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by* the party offering the deposition; or (C) that the witness is *unable to attend or testify because of age, illness, infirmity,* or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." (Italics ours.)

Commission. The reasons for admission or exclusion of the prior record were argued at length and in detail, both orally and in writing. The Commission was fully aware of the claimed infirmities in the prior proceeding. The objections raised by petitioner go to the weight, rather than the admissibility of the prior record. This record merely places in context the testimony of petitioner and his second wife given at the Commission hearing. We find no abuse of discretion.

This court will not overturn a Commission's decision where that decision is not arbitrary or capricious and where the petitioner has had a full opportunity to be heard and there is adequate, competent evidence to support the Commission decision. *State ex rel. Littau v. Seattle*, 189 Wash. 64, 63 P.2d 515 (1937); *State ex rel. Perry v. Seattle, supra*; *State ex rel. Beam v. Fulwiler, supra*; *Deering v. Seattle, supra*. We are unable on the record before us to find that the decision of the Civil Service Commission was arbitrary or capricious.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied March 31, 1975.