IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHN INGERSOLL, | ) | |
| | ) | No. 34848-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MATTAWA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — John Ingersoll appeals from a civil service commission decision

that upheld the termination of his job as a police officer for the City of Mattawa.

Discerning no prejudicial error and concluding that the evidence supported the action, we

affirm.

FACTS

Mr. Ingersoll was hired as a police officer for Mattawa in 2009. In May 2012, his

wife and children left their house and were transported to a domestic violence safe house

whose location was unknown to the officer. The City placed Officer Ingersoll on

administrative leave. After a three month investigation, the Mayor sent the officer a *Loudermill* letter.[1]

The letter accused the officer of domestic violence as well as harassment and intimidation of various Mattawa citizens and several other allegations. At the ensuing meeting, Officer Ingersoll denied all of the allegations against him. The Mayor sent a second *Loudermill* letter on January 25, 2013. This letter repeated the original allegations and expanded upon some of them. The letter also noted that the officer's personnel file was missing. The City also required the officer to undergo a fitness for duty examination.

Around that time, a new police chief, John Turley, was hired. Chief Turley soon found the personnel file and discovered therein a letter from Officer Ingersoll's previous employer, the King County Sheriff's Office. The letter indicated that Ingersoll had been terminated from King County for not meeting standards; that information was at odds with the statement on Ingersoll's city job application that he had resigned in good standing from the King County Sheriff's Office.

Chief Turley on February 13, 2013, issued a disciplinary notice for Ingersoll's failure to follow directions regarding service of the second *Loudermill* letter. He had not

---

[1] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (due process is satisfied when a public employee receives a letter listing allegations against him and informing him of the opportunity to respond).

arrived at the office to receive the letter and the copy sent by certified mail was returned unclaimed. The following month, the officer met with Dr. Mark Mays for the fitness for duty evaluation. Dr. Mays offered a lengthy report that concluded the officer had a Personality Trait Disturbance and likely would have future difficulties. Dr. Mays also noted that Mr. Ingersoll was "prone to denial" and allegedly engaged in behavior that others "describe as problematic." Clerk's Papers (CP) at 886, 887. Dr. Mays concluded, "most law enforcement agencies reviewing these results would consider John Ingersoll not to be qualified as fit for duty." CP at 887.

The Mayor issued a third *Loudermill* letter stating eight factual bases for discipline and alleging violations of Mattawa Police Civil Service Rule X, Section 2, Subsections A, B, C, and K. The rule and subsections cover disciplinary action and identified instances in which discipline may be justified. The Mayor's letter summarized the four subsections:

> Subsection A provides:
>> Incompetency, inefficiency, or inattention to or dereliction of duty.
>
> Subsection B provides:
>> Violation of law, of official rules or regulations, or orders, or failure to obey any lawful or reasonable direction when such failure or violation amounts to insubordination or serious breach of discipline.
>
> Subsection C provides:
>> Dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public or a fellow employee, or any other act of omission or commission tending to injure the public service; or any other willful failure on the part of the employee to properly conduct himself; or any willful violation of the provisions of Chapter 41.12 RCW or of these rules and regulations.

3

Subsection K provides:
> Any other act or failure to act which in the judgment of the Civil
> Service Commission is sufficient to show the offender to be an
> unsuitable and unfit person to be employed in the public service.

CP at 76. The first seven of the eight allegations involved misconduct, while the eighth

relied on Dr. Mays' evaluation to conclude that Mr. Ingersoll was unfit for duty. CP at

2270-2275.

A disciplinary hearing was held May 23, 2013, in response to the third letter. On

June 3, the Mayor terminated the officer's employment. A contentious civil service

commission hearing was conducted over five evenings during the period of October 1 to

October 7. After the City concluded its case, the Commission "scratched" several of the

allegations about which it heard no evidence, including domestic violence and

insubordination. The officer then presented several witnesses and testified in his own

behalf. The parties then argued the case to the Commission.

The Civil Service Commission upheld the termination on December 3, 2013. Its

findings and decision dismissed the first seven allegations either because they were not

supported by sufficient evidence or were not acted on in time. The Commission entered

five findings in support of its decision.

1. The conduct of Mr. Ingersoll during the hearing showed an immaturity
   and inconsistency regarding your ability to control your actions and
   emotions. This included comments during witness testimony, attempts
   to stare down citizens at the hearing and providing testimony totally
   denying any wrongdoing on his part.

4

2. Mr. Ingersoll's lack of acceptance that his wife and children were in a safe house, the location of which would not be disclosed, based upon his law enforcement training, should have been an acceptable explanation. The very nature of a safe house is anonymity. The Commission finds Mr. Ingersoll's conduct in attempting to locate the safe house was poor judgment and led to the making of a false missing person report. This conduct is consistent with findings in a fitness-for-duty examination regarding self-indulgent behaviors and inconsistency regarding his position as a police officer.

3. Mr. Ingersoll's conduct in an incident involving two Hispanic gentlemen at Ken's Corner also evidences poor judgment. The Commission finds the incident shows a disregard of the boundaries between his private capacity and that of a police officer. Recognizing a police officer has police powers 24 hours of the day, does not justify seizing property and then leaving the scene of the incident without calling for assistance by an on-duty police officer. This conduct evidences the type of inconsistent police performance referenced in the fitness-for-duty letter of April 3, 2013.

4. Substantial testimony was heard regarding the testing on a DUI case. The Commission does not find the testing protocol to be the relevant issue; however, the Commission does find the testimonies of the other officers present indicate Mr. Ingersoll lacked self control in dealing with this matter, which again evidences behavior described in the fitness-for-duty exam.

5. The Commission finds the report of Dr. Mays to be credible and the assessment to be consistent with conduct as stated above.

CP at 9-10.

Mr. Ingersoll petitioned the Grant County Superior Court for review of the decision; the City cross petitioned. After the hearing, the court rejected Mr. Ingersoll's petition and declined to address the cross petition. Mr. Ingersoll then timely appealed to this court. A panel heard oral argument on the case.

5

ANALYSIS

This appeal presents two issues. Mr. Ingersoll contends that the Commission erred in considering his behavior during the hearing. He also contends that the Commission's decision was arbitrary and capricious. Before turning to those issues, we initially note the standards that govern our review of this case.

In an appeal from a superior court decision upholding a city civil service commission's affirmance of the discharge of a police officer, this court directly reviews the record considered by the superior court and determines whether the commission's conclusions could be, as a matter of law, arbitrary, capricious, or contrary to law. *Benavides v. Civil Serv. Comm'n*, 26 Wn. App. 531, 534, 613 P.2d 807 (1980). Under the arbitrary and capricious standard, this court must uphold the Commission unless it finds willful and unreasoning action in disregard of the facts and circumstances. *Skagit County v. Dep't of Ecology*, 93 Wn.2d 742, 749, 613 P.2d 115 (1980). A decision by an administrative commission is not arbitrary and capricious simply because this court concludes, after reading the record, it would have decided otherwise; only a finding or decision made without evidence to support it is arbitrary. *State ex rel. Perry v. City of Seattle*, 69 Wn.2d 816, 821, 420 P.2d 704 (1966).

*Behavior at Hearing*

Mr. Ingersoll argues that the Commission erred in considering his behavior during the hearing because (1) it postdated the decision to terminate his employment, (2)

punished him for denying the allegations of misconduct during his testimony, and (3) he was not provided notice that his behavior might be used against him. We conclude that none of these arguments, which we consider jointly, show that the Commission erred in considering Mr. Ingersoll's behavior as evidence supporting the allegation of unfitness.

In general, tenured, full-time city police officers covered by chapter 41.12 RCW have a property interest in continued employment. *Bullo v. City of Fife*, 50 Wn. App. 602, 607, 749 P.2d 749 (1988). The due process clause of the United States Constitution safeguards a person's property interest by requiring notice and an opportunity to be heard prior to any governmental deprivation of a property interest. *Id.*, at 606-607. The due process requirements of RCW 41.12.090 include discharge only for cause and only after written notice of the reasons for discharge, a public hearing at which the person had the opportunity to personally appear with counsel and present a defense, and the opportunity to appeal the results to the superior court. The person must be afforded an opportunity to refute the charges and present his side of the story. *Danielson v. City of Seattle*, 108 Wn.2d 788, 798, 742 P.2d 717 (1987) (discussing pretermination hearings).

A civil service commission has discretionary power to investigate whether charges brought against a police officer are sufficient grounds for dismissal, the exercise of this power is confined to the content of those charges, and the commission may not substitute reasons of its own. *In re Smith*, 30 Wn. App. 943, 947, 639 P.2d 779 (1982). As stated in the statute, "the investigation shall be confined to the determination of the question of

whether such removal, suspension, demotion or discharge was or was not made for political or religious reasons and was or was not made in good faith for cause." RCW 41.12.090. To afford the accused administrative due process, an officer must know the precise conduct that is the subject of the hearing and the basis for the discharge. *Porter v. Civil Serv. Comm'n of Spokane*, 12 Wn. App. 767, 773, 532 P.2d 296 (1975).

The parties, quite understandably, struggle to find relevant authority on the hearing room behavior issue. Typically, participants in a trial or hearing are on their best behavior in order to present themselves to the decision-maker in the best possible light. Nonetheless, the whole purpose of live testimony is to allow the decision-maker to assess the credibility of the witness. For that reason, we believe a participant's behavior during the hearing is always a factor that the decision-maker may consider. In many instances, the demeanor evidence will only serve to aid in the credibility assessment. In other instances, current behavior may shed light on allegations regarding past behavior or, as in this case, the accuracy of a third party's evaluation. Here, Mr. Ingersoll appeared to act consistently with Dr. Mays' evaluation and his actions served to help validate the report. It was not error for the Commission to consider Mr. Ingersoll's behavior and report its findings.

The argument that he was not put on notice that his behavior might be considered at the hearing also misses the mark. Mr. Ingersoll was terminated due to unfitness for duty, not for his behavior at the hearing. No warning needed to be given about

8

subsequent behavior because that was not the subject matter of the hearing. The fact that the behavior tended to corroborate the allegations against him may have been fortuitous for the City, but it was not something that could be predicted, let alone been the subject of prospective notice. Mr. Ingersoll controlled his own behavior. The Commission was not required to anticipate that Mr. Ingersoll might act out against his own best interests and warn him in advance that it could use his behavior against him.

More troublesome is the wording of finding 1 about Mr. Ingersoll "providing testimony totally denying any wrongdoing." CP at 9. He argues that he was punished for exercising his due process right to present his side of the story. Although that certainly would be problematic, we think the problem here is more one of unartful wording than it is a violation of due process.

The first sentence of finding 1 described his conduct at the hearing and reflected the assessment of the Commission that it "showed an immaturity and inconsistency regarding your ability to control your actions and emotions." CP at 9. The second sentence, which concludes with the language challenged by Mr. Ingersoll, gave examples about the troubling behavior observed by the Commission—commenting during the testimony of others, attempting to stare down citizens attending the hearing, and totally denying any wrongdoing in his testimony. In context, this portion of the sentence simply reflects an assessment of Mr. Ingersoll's credibility and the corroboration it gave to Dr. Mays' report.

As fact-finder, the Commission was entitled to determine which witnesses it believed and which it did not. Mr. Ingersoll denied all wrongdoing despite the contrary testimony of others. If the Commission credited the other witnesses, Mr. Ingersoll's denials rang hollow. The Commission was free to comment on that determination if it saw fit to do so.

However, finding 5 suggests an additional reason for the challenged final comment of finding 1. Finding 5 states: "The Commission finds the report of Dr. Mays to be credible and *the assessment to be consistent with conduct as stated above*." CP at 10. The report had noted consistent denial of any wrongdoing whatsoever as a character trait of Mr. Ingersoll that contributed to Dr. Mays' conclusion that Mr. Ingersoll had a Personality Trait Disturbance. Viewed in this light, the statement from finding 1 merely notes the "behavior" of total denial despite the contrary evidence. Mr. Ingersoll simply could not accept the possibility that he might have been in the wrong.

While this statement could have been better drafted, we do not read it as punishing Mr. Ingersoll for denying the case against him. Instead, it simply recognizes that his consistent practice of denying all wrongdoing was a part of the trait diagnosed by Dr. Mays.

Although unartful, the challenged language of finding 1 is not indicative of prejudicial error by the Commission. This assignment of error is without merit.

10

*Commission's Decision*

Mr. Ingersoll also argues that the Commission's decision was arbitrary and capricious. Specifically, he contends that the Commission erred in relying upon the seven "misconduct" factors that it rejected as grounds for termination and in relying on Dr. Mays' report. We address the first contention before turning to the second.

As noted previously, this court must uphold the Commission unless it finds willful and unreasoning action in disregard of the facts and circumstances. *Skagit County*, 93 Wn.2d at 749. Mr. Ingersoll has not established that the Commission's decision was arbitrary or capricious under this demanding standard.

Mr. Ingersoll first finds fault with the Commission's consideration of the facts of three of the incidents that it determined did not, on their own, independently justify the termination decision. He argues that the dismissed counts could not thereafter be considered. However, the Commission carefully limited what it "dismissed" and why it did so. Although some of the misconduct allegations were dismissed for insufficient evidence, others were rejected due to failure to take timely disciplinary action. CP at 9. The Commission then determined:

> Although the allegations set forth in these paragraphs do not support termination of employment for misconduct, <u>the conduct in question does provide background evidence regarding fitness-for-duty and, for purposes of this decision, are considered by the Commission.</u>

CP at 9 (emphasis added).

11

We are aware of no rule that would require the Commission to limit its consideration of these incidents merely to the misconduct prong of the rules.[2] Given that Dr. Mays relied on some of these incidents in his assessment of Officer Ingersoll's fitness for duty, it was understandable that the Commission would do the same *if* it found that the incidents occurred as described by the witnesses. The action was not arbitrary or capricious. The Commission did not err in its consideration of the incidents described in findings 3, 4, and 5.

Mr. Ingersoll also argues that the Commission erred in finding him unfit for duty, contending both that (1) the termination letter did not use any variant of the word "mental" in front of the unfit for duty allegation and (2) that it was error to rely on the report of Dr. Mays. Neither of these contentions merits much discussion.

The Civil Service rule governing fitness for duty states:

> Any other act or failure to act which in the judgment of the civil service commission is sufficient to show the offender to be an unsuitable and unfit person to be employed in the public service.

CP at 1600 (Rule X, Section 2, Subsection K of Rules of Mattawa Police Civil Service Commission). As noted therein, there is no adjective qualifying the meaning of the word "unfit." The third *Loudermill* letter simply stated that he was "not fit for duty" in accordance with the report of Dr. Mays. CP at 2274. That reference strongly informed

---

[2] *Cf.* ER 105 (requiring court to instruct jury when evidence may be considered only for a limited use).

Mr. Ingersoll that his mental health, not physical capacity, was in question. The Commission similarly found that Mr. Ingersoll was "not fit for duty." CP at 10.

No "mental unfitness" qualification needed to be alleged, nor was any found. However, the City expressly relied on the report of Dr. Mays to support the unfitness finding and that allegation gave Mr. Ingersoll notice that only his mental fitness was at issue. There was no undisclosed allegation of physical unfitness.

Finally, the argument that the report of Dr. Mays could not be relied on is without merit. Mr. Ingersoll and the City both offered the report as exhibits before the Commission, and the exhibit entered (along with numerous others) by agreement of the parties. CP at 577, 2255, 1616. His hearing brief also referenced the exhibit. CP at 31. Having offered the exhibit and relied on it below, he can hardly complain on appeal that the Commission also relied on it.[3]

Similarly, the fact that Dr. Mays did not testify is meaningless. Mr. Ingersoll was very unlikely to want to have him testify, but certainly could have objected to the report if he had wanted the doctor to appear in person. Moreover, there was significant testimony at trial to corroborate some of the incidents discussed in the report. He was not found unfit for duty merely on the basis of multiple levels of uncorroborated hearsay as he now alleges.

---

[3] This argument likely is foreclosed by the invited error doctrine. *E.g.*, *Humbert v. Walla Walla*, 145 Wn. App. 185, 192, 185 P.3d 660 (2008).

No. 34848-2-III
*Ingersoll v. City of Mattawa*

The Commission did not err in relying upon the report. It amply supported the determination that Mr. Ingersoll was unfit to work as a police officer.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.

14